MARTHA H. HEAKE, EXECUTRIX UNDER WILL OF JOHN H. HEAKE, Jr., DECEASED, PLAINTIFF-RESPONDENT, v. ATLANTIC CASUALTY INSURANCE COMPANY, DEFENDANT-APPELLANT.

EDWARD GARGANO, AN INFANT, BY HIS FATHER AND GUARDIAN AD LITEM, MICHAEL GARGANO, PLAINTIFF-RESPONDENT, v. AUTOMOBILE ASSOCIATION OF NEW JERSEY AND ATLANTIC CASUALTY INSURANCE COMPANY, DEFENDANTS-APPELLANTS.

Argued May 10, 1954—Decided May 31, 1954.

*Mr. Harry Green* argued the cause for the appellants.

*Mr. James Hunter, III*, argued the cause for the respondents (*Mr. Joseph C. Haines*, attorney for respondent Martha H. Heake; *Messrs. Archer, Greiner, Hunter & Read*, attorneys for respondent Edward Gargano).

The opinion of the court was delivered by
VANDERBILT, C. J.

## I.

On January 14, 1952 John H. Heake, Jr. was killed in a collision between two motor vehicles in which the automobiles involved were operated by Edward Gargano and Gerald Cohen. Martha H. Heake, the widow of the deceased and executrix of his will, instituted a suit in the Superior Court, Law Division, under the Death Act against both Gargano and Cohen, resulting in a judgment in her favor against both the defendants in the amount of $15,000. Of this judgment $5,000 was paid on Cohen's behalf, leaving a balance due of $10,000, which Atlantic Casualty Insurance Company, Gargano's insurer, refused to pay.

Martha H. Heake then filed a complaint against Atlantic to recover the balance of her judgment under the combination automobile policy which it had previously issued to Gargano, asserting Atlantic's liability thereunder and seeking reformation of the policy by the deletion of certain endorsements contained therein on which Atlantic relied in denying liability. Edward Gargano also instituted suit against Atlantic, as well as against the Automobile Association of New Jersey, which was obligated under an automobile service contract issued to Gargano and which was the general agent of Atlantic in the issuance of Atlantic's policy. Gargano sought damages from Atlantic for its failure to perform its obligations under its policy and reformation by the deletion of the endorsements to the policy, as well as damages from the Association for its failure to perform its obligations under its automobile service contract, and for its fraud and breach of warranty. Atlantic's motion in the Heake case for summary judgment was denied and the two cases were then consolidated for trial without a jury.

The evidence disclosed that on April 2, 1951, Edward Gargano, then aged 17, applied for and obtained his first automobile driver's license. The license was stamped with the word "initial" and revealed the licensee's correct age. In June of the same year Gargano purchased an automobile in his own name. Through the automobile agency that had sold him his car the representatives of Atlantic and the Association learned that Gargano wished to obtain insurance coverage and as a result George D. Preiksat, a licensed solicitor of the Association, which was admittedly the general agent of Atlantic, called at Gargano's house for the express purpose of selling Gargano insurance. As a result of a conversation between Gargano and Preiksat it was agreed that Atlantic would issue its automobile liability policy which among other things was to provide for coverage up to $10,000 for any person injured. Preiksat then requested Gargano to furnish information concerning his age and certain data regarding the car. Gargano gave oral answers to all these questions and then produced and handed over to Preiksat his registra-

tion card and his initial driver's license showing his age as 17. After making notes from these Preiksat returned them to Gargano and handed him a blank application with instructions to sign it. Gargano signed it in blank and was told by Preiksat that the insurance was effective immediately.

Several days later Gargano received in the mail combination automobile policy No. 608644 of Atlantic and the service contract of the Association. Gargano looked at the first page which contained the typewritten declarations as to coverage, was satisfied that it was in accordance with his statements to Preiksat and then turned it over to his mother who placed it in a safe where it remained until after the accident. The declarations in the policy correctly set forth the agreement of the parties with respect to coverage and also truly stated Gargano's name, address, occupation, employer, description of the car, the fact that it was financed, that no insurer had cancelled or refused to issue any automobile insurance for Gargano, and that neither his driver's license nor registration had ever been revoked or suspended. Neither the application nor any copy thereof was annexed to the policy, nor was it referred to in the policy.

The second page of the policy contained the usual provision that it was issued "in consideration of the payment of the premium and in reliance upon the statements in the declaration." Paragraph 25 of the policy provided:

"Declarations: By acceptance of this policy the named insured agrees that the statements in the declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the company or any of its agents relating to this insurance."

Attached to the policy were two endorsements both entitled "Limitation of Use." The first read:

"It is agreed that such insurance as is afforded by the policy does not apply whenever automobile described in the policy is operated by any person licensed to operate an automobile for less than one year.

Newly licensed drivers may be added on with the written permission of the insurance company."

The second stated:

"It is agreed that such insurance as is afforded by the policy does not apply when said automobile is being driven by any person under the age of twenty-five (25) except
1. Edward Gargano Age 23
 hereinbefore named."

The policy is unusual in several respects. First of all, the pages measure 5½ x 8½ inches instead of the usual 8½ x 11 or 8½ x 13, and accordingly the print is fine. Secondly, the policy contains eight pages instead of the customary four or five pages used in a combination automobile policy. Thirdly, the endorsements here are attached to the third page whereas in most policies such endorsements are annexed to the first page with the other typewritten material where they will naturally attract attention. The whole policy seems complicated even to one familiar with insurance policies.

The service contract, which was issued for a separate premium, was an agreement by the Association to furnish services to Gargano, such as emergency repairs, towing, bail bonds, and legal services in connection with traffic violations. This contract consisted of six pages of the same size and type as the policy. The only typewritten material was on the first page and was identical to that on the first page of the policy except of course that it had no typewritten provisions as to limits of insurance liability.

Thus the endorsements attached to the policy on which the defendant seeks to avoid liability were embedded on the inside of 14 pages of fine print instead of appearing, as such limitations generally do, on the first page of the policy.

Following the accident in question Gargano sent a report to Atlantic which shortly thereafter notified him by letter that it disclaimed liability because in his application for the insurance he had stated that he was 23 years of age and that no driver licensed less than one year would operate the car, both of which statements were untrue. The letter concluded by stating that in view of these misrepresentations by Gar-

gano the insurer was cancelling the policy and service contract and was returning to him the premium which he had paid. In the suit instituted by Mrs. Heake against Gargano Atlantic defended the action on his behalf, but did so under an agreement that such action on its part did not constitute a waiver of its disclaimer of liability. The actions by Mrs. Heake and Gargano against Atlantic and Association assert breach of contract and estoppel to deny liability and seek reformation by the deletion and nullification of the above quoted endorsements. The defendants based their defense of lack of liability under the policy on the alleged misrepresentations by Gargano of his age and of the length of time that he had held a driver's license as well as on the two endorsements above quoted attached to the policy embodying the same statements. The trial court awarded judgments for both plaintiffs against Atlantic in the sum of $10,000 while Gargano also recovered judgment for $10,000 against Association, together with damages of $260, and the policy was reformed to eliminate the endorsements. In reaching these conclusions the trial judge held that the untrue answers in the application resulted from the agent's actions, that Gargano had acted in good faith, and that in the circumstances the insurer was responsible for its agent's fraud. The Appellate Division of the Superior Court affirmed, 29 *N. J. Super.* 242, but due to a dissent in that Court the appeal is here as a matter of right.

## II.

The general rule with respect to the reformation of contracts applies equally to insurance policies: relief will be granted only where there is mutual mistake or where a mistake on the part of one party is accompanied by fraud or other unconscionable conduct of the other party. See *Sardo v. Fidelity & Deposit Co. of Maryland*, 100 *N. J. Eq.* 332, 334 (*E. & A.* 1926); *Berkowitz v. Westchester Fire Ins. Co.*, 106 *N. J. Eq.* 238, 241 (*E. & A.* 1930); *Volker v. Connecticut Fire Ins. Co.*, 22 *N. J. Super.* 314, 321 (*App. Div.* 1952);

29 *Am. Jur.* 237; 13 *Appleman, Insurance Law and Practice* 366 (1945). Here it is clear that a mistake was made on the part of Gargano, since he believed that the policy gave him the coverage that had been agreed on in his conversation with the agent Preiksat. Nor is there any doubt that Preiksat was guilty of unconscionable conduct. Both the trial court and the Appellate Division of the Superior Court found that although Gargano had acted in good faith Preiksat was guilty of fraud in causing to be typed upon Gargano's application for insurance false statements in order to procure the issuance of the policy by Atlantic. The agent Preiksat did not testify nor was his failure to do so excused. His fraud stands confessed. Gargano's proof of Preiksat's fraud is based on documentary evidence of his driver's license and registration card. We stress these facts in concurring in the findings of both courts below.

The defendants, however, claim first that the agent's conduct is not imputable to them, citing cases that hold that the principal is not liable for an agent's fraud where no active wrongdoing is attributable to the principal. But the rule is otherwise; as stated in *American Surety Co. v. Conway*, 88 *N. J. Eq.* 370, 375 (*E. & A.* 1917):

"Knowledge of the agent is chargeable upon his principal, whenever the principal, if acting for himself, would have received notice of the matters known to the agent."

Here the honest mistake of the insured was caused by the reprehensible conduct of the defendant's representative. In the eyes of the law Atlantic knew Gargano's age and his lack of driving experience, because Gargano gave Preiksat documentary evidence thereof. The fact that the principal has not authorized or approved the fraudulent conduct of its agent— in obtaining business by falsely recording the documentary evidence from the insured—in no way relieves it of responsibility for his actions. Since it has placed the agent in a position to do such acts it must be answerable for the manner in which the agent has conducted himself in doing business on behalf of the principal. *Corona Kid Co. v. Lichtman*, 84

*N. J. L.* 363, 369 (*E. & A.* 1913). See 29 *Am. Jur.* 612; 2 *Couch on Insurance* 1544; 1 *Mechem on Agency* 774. Where the insurer has sought to avoid liability under its policy because of the fraud of its agent, the general rule is that if in the application for insurance the agent fills in false answers to interrogations contained therein which have been truthfully answered by the insured, the insurer cannot rely upon the falsity of such answers in seeking to avoid liability, Annotation, 148 *A. L. R.* 507, 508; 29 *Am. Jur.* 643; 17 *Appleman, supra,* § 9401.

The defendants next contend that if the insured had read the policy he would have discovered that he was excluded from coverage by virtue of the two endorsements heretofore quoted that limit coverage to drivers who had been licensed for at least one year and that withheld coverage where the driver was under the age of 25 years, except for the insured whose age was erroneously listed on the endorsement as 23 years. The defendants argue that Gargano's own negligence in failing to read the policy and observe these conditions estops him from obtaining equitable relief by way of reformation of the policy. The defendants likewise contend that the insured was at fault in signing the application in blank before the necessary information as to his age and driving experience was filled in, contrary to the statement above his signature to the effect that he had read the application and represented the answers to be true.

 In New Jersey the general rule is that an insured is bound by the terms of the policy that he has received and had an opportunity to read, and reformation will be denied if he has been negligent in failing to apprise himself of its contents, *Crescent Ring Co. v. Travelers' Indem. Co.,* 102 *N. J. L.* 85 (*E. & A.* 1926); *Berkowitz v. Westchester Fire Ins. Co., supra,* 106 *N. J. Eq.* 238. Yet it is also quite clear that where the insurer has been guilty of fraud or other unconscionable conduct, it cannot successfully plead that if the insured had exercised reasonable care he would not have been defrauded. The general rule applicable to all cases of reformation, including insurance problems, is set forth by

Chief Justice Gummere in his opinion for the court in *Lloyd v. Hulick*, 69 *N. J. Eq.* 784 (*E. & A.* 1906) :

"Failure to discover an intended fraud before it has been actually perpetrated must necessarily exist in every case where the courts are appealed to to relieve the wronged party from its effects, and the fact that the exercise of a greater degree of prudence on the part of him who has been defrauded would have prevented the fraud from being successfully carried through affords no ground for refusing relief." 69 *N. J. Eq.* at *page* 786.

In order to determine whether equitable relief by way of reformation should be granted it is necessary to look at all the facts. The inexperienced 17-year-old insured relied implicitly on the defendant's agent, gave him truthfully all the information he asked for, followed his instructions to the letter in signing the application for the insurance policy, and believed his statement that the policy gave him protection. The agent's unconscionable conduct toward the plaintiff in writing on the application his age at 23 when the agent knew from the insured's driver's license that he was only 17, as well as in writing on the application that the insured had driven more than a year when the agent likewise knew from the insured's driver's license that it was his initial license, is too obvious for discussion. The result might be different if the agent had not been shown documentary proof of the insured's truthful representations, or if he had not induced the insured to rely on him by signing the application in blank as if it were the normal course of business or if the application had been attached to the policy where such documents frequently are to be found with the other typewritten material or if the policy had been in the usual form of combination automobile policy. But, as we have seen, the policy was unusual, if not unique, in this state in the size of the individual pages, the number of the pages, the size of its print, the location of the endorsements at a spot remote from the other typewriting on the policy. In addition, a reading of the two endorsements discloses a patent ambiguity which must be resolved against the company. The one endorsement excludes from its coverage those

drivers who have been licensed to operate an automobile less than one year, thus apparently omitting from the coverage Gargano who, to the imputed knowledge of the insurer, fell in this excluded category. On the other hand, the second endorsement specifically includes Gargano "age 23" within its terms.

In these circumstances we agree with the courts below that the plaintiffs have produced the clear and convincing proof on which alone the extraordinary remedy of reformation will be granted. The testimony is uncontradicted as to the good faith of the insured, as well as the fraud of the defendant's agent. The insured is of tender age, and quite naturally placed full reliance upon the good faith and integrity of the agent. The policy that was issued was such that it failed adequately to call the attention of the insured to the endorsements that had been added, and the endorsements themselves create doubt as to the intended coverage.

In these circumstances the judgment below is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For reversal*—None.