74 N.J. Super. 354 (1962)
181 A.2d 385
SHIRLEY G. PORTELLA AND JOSE M. PORTELLA, HER HUSBAND, PLAINTIFFS,
v.
LEONARD SONNENBERG, DEFENDANT AND THIRD-PARTY PLAINTIFF-RESPONDENT,
v.
WALTER MAGINNIS, AND THE TRAVELERS INSURANCE CO., APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued February 26, 1962.
Decided May 17, 1962.
*356 Before Judges CONFORD, GAULKIN and KILKENNY.
Mr. Sidney P. McCord argued the cause for appellants (Messrs. Starr, Summerill and Davis, attorneys).
Mr. I.V. DiMartino argued the cause for plaintiffs.
The opinion of the court was delivered by GAULKIN, J.A.D.
The present third-party action began after Shirley G. Portella and her husband instituted suit against Sonnenberg for injuries sustained when Mrs. Portella fell into an open elevator shaft in Sonnenberg's furniture store in Camden.
By its terms the bodily injury liability policy issued by Travelers covering the store did not cover accidents arising out of the use of elevators. But Sonnenberg filed a third-party complaint against Travelers and Maginnis, the local agent who issued the policy, alleging that complete coverage with no exceptions had been requested, but that through the negligence or mistake of Maginnis or Travelers, or both, such coverage was not provided. The insured sought damages against both Travelers and Maginnis and reformation of the policy. Meanwhile the Portella action was held in abeyance pending the outcome of this litigation.
The trial court rendered a decision in favor of Sonnenberg against Maginnis alone, and denied reformation, but the case was remanded by us to the trial court for necessary findings of fact and conclusions of law. After additional testimony was taken on remand the court concluded that *357 both Travelers and Maginnis were liable to Sonnenberg, and that reformation be granted. Both third-party defendants bring the present appeal.
The judge below found that one Victor N. Baron, a cousin of Sonnenberg and then a licensed insurance broker, originally told Maginnis about Sonnenberg's furniture store and suggested that Maginnis might be able to write a liability policy covering the store.
What followed was sharply disputed at the trial below. Sonnenberg claimed that Maginnis came personally to the store premises, walked "through the premises," took specific note of and possibly rode on the elevator in the open shaft of which the alleged accident later occurred. Sonnenberg further testified that he requested coverage for "any and every contingency." Maginnis, on the other hand, testified that he never visited the store but issued the policy in reliance on facts given to him over the phone by Baron. However, there was no mention of elevators in his conversations with Baron prior to the accident.
Maginnis issued and countersigned the Travelers policy in question on March 4, 1957. He also wrote truck insurance and a workmen's compensation policy for Sonnenberg. When the Travelers policy arrived Sonnenberg looked at it, but he admitted that he did not read it thoroughly.
The accident occurred in August 1957, and the subsequent events are again in sharp dispute. Sonnenberg testified that when notified of the accident Maginnis assured him that he was "completely covered" and would file a claim with the company, and that not until several weeks later did Maginnis report to him that he was not covered for elevator accidents. Maginnis presented a very different version of the post-accident events. He denied ever admitting that he thought the Travelers policy covered the Portella accident. He testified that immediately after the accident he told Baron that Sonnenberg had no elevator coverage. He admitted that he went to Sonnenberg's store following the accident and subsequently filed a claim, but his testimony *358 was that he told Sonnenberg there was no elevator coverage, but that he would submit the claim to the company anyway on the chance that Travelers might honor it.
The trial court resolved the factual conflicts in favor of Sonnenberg, concluding that both he and Maginnis intended the coverage to be complete and without any exclusion for elevator accidents.
The appellants' principal contention on appeal is that such a finding was against the weight of the evidence.
There is no question that a party to an insurance policy may have the contract reformed where there is a mutual mistake or where the complaining party's unilateral mistake is accompanied by the fraud or unconscionable conduct of the other party. Heake v. Atlantic Casualty Ins. Co., 15 N.J. 475, 481 (1954); see Nazarro v. Globe & Republic Ins. Co., 122 N.J. Eq. 361 (Ch. 1937), affirmed 127 N.J. Eq. 279 (E. & A. 1940); Sardo v. Fidelity & Deposit Co. of Maryland, 100 N.J. Eq. 332, 334 (E. & A. 1926); Volker v. Conn. Fire Ins. Co., 22 N.J. Super. 314, 321 (App. Div. 1952); 29 Am. Jur., § 340, p. 704; 44 C.J.S. Insurance § 278, p. 1108; 13 Appleman, Insurance Law and Practice, 366 (1945).
We cannot say that the trial court's finding that both Sonnenberg and Maginnis understood from the start that the policy to be written was to cover all of the store premises without exception is against the weight of the evidence. It does appear that no direct discussion of elevator coverage as such ever occurred. But Maginnis does not deny that the insured sought complete coverage. His testimony on cross-examination leaves no doubt that even he was well aware during the negotiations that Sonnenberg expected complete coverage without limitation:
"Q. What did you think he wanted?
A. Public liability.
Q. Which in your opinion covers what?
A. Premises operation, period.

* * * * * * * *
*359 Q. Any public liability to you in this case meant any person getting hurt on the premises, is that correct?
A. That is correct, subject to the terms of the contract."
And since the trial judge accepted the testimony of the insured that Maginnis visited the store and noticed the elevator, he reasonably concluded not only that Maginnis knew of the elevator but that, absent any discussion to the contrary, Maginnis knew Sonnenberg would expect it to be covered. The trial court accepted such testimony in the face of Maginnis' specific denials, and we will not question the court's findings as to credibility here. Abeles v. Adams Engineering Co., Inc., 35 N.J. 411, 427 (1961).
But even if we were to conclude that Maginnis had in mind from the start that he would not give Sonnenberg elevator coverage, his conduct in remaining silent about the elevator exclusion after inspecting the store with full knowledge of the insured's request for and expectation of total coverage would constitute such conduct in inducing the mistake as would justify granting reformation even if the mistake were unilateral. See Volker v. Connecticut Fire Ins. Co., 22 N.J. Super. 314, 320-321 (App. Div. 1952); Restatement, Contracts, § 505 (1932).
Even if Maginnis did not know of the existence of an elevator upon the premises, since he knew Sonnenberg asked for and expected to receive complete coverage, it was Maginnis' duty, before issuing a policy excluding elevators, to (1) inquire whether there were elevators on the premises, or (2) tell Sonnenberg that elevators were not covered, or (3) write the policy so plainly that an examination thereof would bring home the exclusion to Sonnenberg. Merchants Ind. Corp. v. Eggleston, 37 N.J. 114, 124 (1962); Bauman v. Royal Indem. Co., 36 N.J. 12 (1961). Here none of the three things was done.
Maginnis made no inquiry of Sonnenberg or Baron whether there was an elevator on the premises, and Maginnis said nothing which gave the insured the slightest indication that elevator and non-elevator portions needed to be distinguished *360 or that elevators were to be excluded from the policy. As the court said in Merchants Ind. Corp. v. Eggleston, supra, at p. 124, "It would be unjust to visit the loss upon an insured whose good faith is unassailable, and to absolve a carrier which could have asked, but did not, for the facts it regards as material."
The appellants urge that the policy itself was notice to the insured that elevators were not covered and that failure to read the policy was negligence on the part of the insured barring recovery.
There is no doubt that Sonnenberg was chargeable with knowledge of the contents of his policy. Heake v. Atlantic Casualty Co., 15 N.J. 475, 483 (1954). But this general rule, based as it is on business utility, will not arrest the duty of good faith and fair dealing residing with the insurer. Merchants Ind. Corp. v. Eggleston, supra. And the policy in question was no fair warning to a person of reasonable prudence that elevator coverage was excluded, especially to a person in no way alerted to the possibility of any doubts about such coverage.
The format of the section dealing with "Coverages" in fact tends to bolster the impression that elevators are covered:

----------------------------------------------------------------------------
Item 3. | | Limits of | Advance
Coverages | Divisions | Liability | Premiums
-------------|----------------------------|---------------------|-----------
 | 1. Premises-Operations | $50,000 each | $14.50
A. Bodily | | person |
 Injury |----------------------------| |-----------
 Liability | 2. Elevators | $100,000 each |
 | | accident |
 |----------------------------| |-----------
 | 3. Independent | |
 | Contractors | aggregate |
 |----------------------------| |-----------
 | 4. Products-Completed | (Aggregate Applies |
 | Operations | to Divs. 1, 3, & 4) |
----------------------------------------------------------------------------

To the right of the "Limits of Liability" column, in the "Advance Premiums" column, but beginning on the line *361 opposite "Independent Contractors" was the following statement:
"The absence of an entry in any premium space shall mean that insurance is not afforded with respect to the division opposite such premium space."
The body of the policy contained the following "Definition of Hazards.":
"Division 1. Premises-Operations. The ownership, maintenance or use of premises, and all operations.
Division 2. Elevators. The ownership, maintenance or use of any elevator designated in the declarations."
To a lawyer or insurance expert who studied the policy carefully the limitation would be evident, but it would be the unusual layman who would detect it. There was nothing in the policy to suggest that the reader search for a limitation of what appears to be the unequivocal coverage of "Premises-Operations," including what would appear to be $100,000 coverage against accidents arising out of the use of elevators. The insured was bound to make only such examination as was reasonable for a layman under the specific factual circumstances. In Merchants Ind. Corp. v. Eggleston, supra, the court, holding that a provision of an automobile insurance policy showing an absence of encumbrances on the insured vehicle should not be considered a statement of sole ownership by the insured, said (37 N.J., at p. 122), "Good faith demands that the insurer deal with laymen as laymen and not as experts in the subtleties of law and underwriting."
In Bauman v. Royal Indem. Co., 36 N.J. 12 (1961), the court held that a carrier must alert the insured to changes in a renewal policy and may not rely on the presumption that the insured is familiar with the contract terms. The generating principle in Bauman was the consideration that an insured not alerted to the fact of alteration will not scrutinize a renewal policy because he will reasonably conclude that its terms are the same as the *362 original. Similarly here, where the facts indicate that the insured had every reason to think that the policy would contain elevator coverage, and where inspection of the policy would tend to confirm such belief, we will not impose a duty of inspection greater than what is reasonable under the circumstances.
Consequently, we hold that Sonnenberg's failure to note the exclusion of elevator coverage does not bar recovery here. Heake v. Atlantic Cas. Ins. Co., supra, pp. 484-485; Schustrin v. Globe Indemnity Co. of N.Y., 44 N.J. Super. 462, 467 (App. Div. 1957) (dictum); Mosiman v. Rapacz, 250 Minn. 464, 84 N.W.2d 898 (Sup. Ct. 1957); Commercial Std. Ins. Co. v. Paul, 35 Tenn. App. 394, 245 S.W.2d 775 (App. Ct. 1951). See also Nazzarro v. Globe & Republic Ins. Co., 122 N.J. Eq. 361 (Ch. 1937), affirmed 127 N.J. Ed. 279 (E. & A. 1940). And see generally Annotation, 81 A.L.R.2d 7 (1962).
Since there is no dispute that Maginnis was the authorized agent of Travelers, and since reformation seems to give Sonnenberg all that he seeks, the judgment against Maginnis is vacated. The judgment of reformation against Travelers is affirmed.