106 N.J. Super. 438 (1969)
256 A.2d 81
HOME INSURANCE COMPANY, PLAINTIFF,
v.
EDWARD RANDOLPH, SAMUEL RANDOLPH, IDA RANDOLPH, NOEL DUNCAN AND FLORENCE DUNCAN, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided July 17, 1969.
*439 Mr. James L. Melhuish for plaintiff (Messrs. Schneider & Morgan, attorneys).
Mr. David Linett for defendants Edward Randolph, Samuel Randolph and Ida Randolph (Mesrs. Gross, Weissberger & Linett, attorneys).
Mr. Stephen C. Carton for defendants Noel Duncan and Florence Duncan (Messrs. Carton, Nary, Witt & Arvanitis, attorneys).
LANE, J.S.C.
Plaintiff seeks a declaratory judgment of its obligations under an automobile liability insurance policy issued to Samuel and Ida Randolph, rescission of such policy and recovery of monies expended by it in the defense of a suit instituted against Edward Randolph by Noel Duncan and Florence Duncan. The matter is before the court on final hearing.
The automobile liability policy is a "Family Combination Automobile Policy" issued to Samuel and Ida Randolph for the period August 20, 1967 to August 20, 1968. The declarations attached to the policy refer to two "owned automobile[s]," a 1961 Chrysler New Yorker and a 1958 Chevrolet pickup truck. At the time of the issuance of the policy these two vehicles were in fact owned by Samuel Randolph. An accident occurred June 15, 1968 while Edward Randolph, the son of Samuel and Ida Randolph residing in their household, was operating the 1961 Chrysler. Suit was instituted in the Law Division against Edward Randolph alone by Noel Duncan and Florence Duncan to recover damages for personal injuries sustained in the accident.
*440 Under the terms of the insurance policy Edward was insured as a "resident of the same household." The basis of plaintiff's position that the policy does not afford coverage to Edward is that on April 2, 1968 title to the automobile was transferred by Samuel to Edward. No money was paid by Edward for the transfer. The reason for the transfer was that the registration had expired and Edward had the money to pay for the renewal. On April 2, 1968 Mrs. Randolph went to the company's agent who had written the policy and requested that Edward's status under the policy be changed because he would be the principal driver of the automobile. She said nothing about the transfer of title. It was not necessary to make any application or to file any forms. No questions were asked to determine if there had been a transfer of title or to determine the circumstances under which Edward was to become the principal operator. The company issued an endorsement the only effect of which was to show the change in premium because the principal operator would be a single male under 25 years of age.
The company takes the position that had it known at the time of the endorsement that Edward was the owner, he would have had to apply for a separate insurance policy. Because he was under 25 years of age and had had at least two moving violations prior to April 2, 1968, he would not have been issued a policy but rather would have had to obtain insurance through the Assigned Risk Plan which would have entailed a higher premium. It is admitted that had there been no transfer of title Edward was insured under the specific terms of the policy whether or not notice had been given to the insurance company that he would be the principal operator. It is further admitted that the risk to the company with Edward as owner-principal operator was no greater than the risk to the company with Edward being the principal operator of the automobile owned by his parents. By advising the insurance company that Edward was to be the principal operator, Mr. and Mrs. Randolph incurred a liability for a higher premium which they paid. *441 There is no provision in the policy that would have allowed the company to cancel during the coverage period merely for the reason that Edward was to be the principal driver.
There was no evidence of any fraud on the part of any of the Randolphs. There was no evidence of any attempt to conceal. In fact, their advising the insurance company that Edward was going to be the principal operator indicates a lack of any intent to defraud.
After the transfer of title to Edward he continued as a resident of the household. In general, the use of the Chrysler was the same as it had been before the transfer. All family members used it. It remained the family automobile.
To say the least, the policy is poorly written. Although the plaintiff alleges a breach of warranty, nowhere in the policy is there any warranty of ownership. The policy by its terms insured the 1961 Chrysler. Nowhere does it specifically provide for a loss of coverage upon transfer of title among the family group.
In Merchants Indemnity Corp v. Eggleston, 37 N.J. 114 (1962), the court was concerned with an endorsement to a family automobile policy adding a substitute automobile. The decision was based upon the insurance company's disclaimer being barred by its conduct; however, the court stated:
"There has been much litigation with respect to `ownership' provisions in automobile liability policies. [Citations omitted] Insurance carriers must be thoroughly aware of the problem. A statement as to `ownership' may, as here, be but conclusion or opinion upon a factual complex. Alamo Cas. Co. v. William Reeves & Co., 258 S.W.2d 211, 214 (Tex Civ. App. 1953). Representations with respect to matters of opinion certify to the truthfulness with which the opinion is held rather than to the validity of the opinion itself. See Shapiro v. Metropolitan Life Ins. Co., 114 N.J. Eq. 378, 381 (E. & A. 1933). It is not difficult to frame questions which will elicit such facts concerning the subject as bear upon the acceptance of the risk. If a carrier is content to ask only for a conclusional statement as to ownership, it should not complain that an untutored insured did not correctly anticipate the view which the highest court of the State might hold. Controversy could be avoided by the use of written applications, plainly worded.
*442 This is not to sey that an intentional fraud will succeed. If an automobile is placed in the name of another to cheat a carrier, of course the culprit will fail. But we agree with the Appellate Division that an intent to defraud must be proved. We are not dealing with a representation contained in an application for insurance or set forth in the policy itself, as to which it has been held that rescission may be had for a material untruth even though the insured was innocent of conscious wrong. See Equitable Life Assurance Society of the United States v. New Horizons, Inc., 28 N.J. 307 (1958). As we have said, the `representation' in the endorsement was not false. Rather we are speaking of the question whether a failure to come forward with facts which were not solicited should entitle a carrier to rescind. In that setting, rescission may be appropriate prior to loss even though the `mistake' be unilateral, i.e., on the part of the carrier, but after loss the status quo cannot be restored. See Green v. Stone, 54 N.J. Eq. 387, 396 (E. & A. 1896). It is then too late for the insured to buy protection. It would be unjust to visit the loss upon an insured whose good faith is unassailable, and to absolve a carrier which could have asked, but did not, for the facts it regards as material." (at pp. 123-124; emphasis supplied)
As pointed out above, there is nothing in the policy to alert the policyholder that coverage would be lost by a transfer to a member of the family unit residing in the household. In Harr v. Allstate Insurance Company, 54 N.J. 287 (1969), Justice Hall stated:
"We have stressed, among other things, the aim that average purchasers of insurance are entitled to the broad measure of protection necessary to fulfill their reasonable expectations; that it is the insurer's burden to obtain, through its representatives, all information pertinent to the risk and the desired coverage before the contract is issued; and that it is likewise its obligation to make policy provisions, especially those relating to coverage, exclusions and vital conditions, plain, clear and prominent to the layman. It is only necessary to list the leading cases. Kievit v. Loyal Protective Life Insurance Company, 34 N.J. 475 (1961); Bauman v. Royal Indemnity Co., 36 N.J. 12 (1961); Merchants Indemnity Corp. v. Eggleston, 37 N.J. 114 (1962); Allen v. Metropolitan Life Insurance Co., 44 N.J. 294 (1965); Gerhardt v. Continental Insurance Cos., 48 N.J. 291 (1966); Cooper v. Government Employees Insurance Co., 51 N.J. 86 (1968); Bowler v. Fidelity & Casualty Co. of New York, 53 N.J. 313 (1969); Lischin v. Nationwide Mutual Insurance Co., 54 N.J. 132 (1969), reversing on dissenting opinion 104 N.J. Super. 525, 527 (App. Div. 1969). See also Portella v. Sonnenberg, 74 N.J. Super. 354 (App. Div. 1962); Muller Fuel Oil Co. v. Insurance Co. of North America, 95 N.J. Super. 564 (App. Div. 1967)." (at p. 304)
*443 Here the automobile was still considered by all of the Randolphs as the family automobile. There was no reason for the Randolphs to suspect that the transfer of title would result in loss of coverage.
If Mrs. Randolph had been asked about ownership, she would have told the company's agent of the transfer. If the company's agent was to deal fairly with the insureds, they would have been advised that their son was insured under the existing policy while they still owned the car, but that in all probability, if he were the owner, he could only obtain insurance through the Assigned Risk Plan. Cf., Bowler v. Fidelity & Casualty Co. of New York, 53 N.J. 313, 326 (1969).
There are cases holding that there is no coverage where the named insured has transferred title upon the theory that the named insured no longer has an insurable interest in the automobile. E.g., Bettinger v. Northwestern Nat. Cas. Co., 213 F.2d 200 (8 Cir. 1954), certiorari denied 348 U.S. 856, 75 S.Ct. 80, 99 L.Ed. 674 (1954); Employers Liability Assur. Corporation v. Sweatt, 95 N.H. 31, 57 A.2d 157 (Sup. Ct. 1948); Galati v. New Amsterdam Casualty Company, 381 S.W.2d 5 (Mo. App. 1964). See Annotation 1 A.L.R.3d 1193 (1965).
Here the named insureds had an insurable interest at the time of the issuance of the policy. Although the automobile was transferred to their son, they retained an insurable interest. He was a member of their household. They used the automobile. He used the automobile on their behalf. It is entirely likely that they could have been subjected to suit on the theory that at the time of an accident he was acting as their agent. Cf., Sandler v. New Jersey Realty Title Ins. Co., 36 N.J. 471, 481 (1962).
It is emphasized that the transfer of title resulted in no increase in the risk to the company. Under the facts of this case, the type of policy with its broad title, the transfer being within the family unit, the use of the automobile as a family automobile remaining the same, the lack of any evidence of *444 fraud, and the failure of the company to inquire as to transfer of title, it is held that the policy afforded coverage to Edward. See Bauman v. Royal Indem. Co., 36 N.J. 12, 21 (1961).
In view of the holding that there is coverage for Edward Randolph, there is no need for the court to discuss whether the company, by undertaking Edward's defense in the Law Division action, waived its right to disclaim coverage.
There will be a declaratory judgment that plaintiff is obligated to defend Edward Randolph in the suit pending by Noel Duncan and Florence Duncan and to pay any judgment recovered against him in accordance with the terms of the policy. After the accident the company, as part of its attempt to rescind, returned $76 of the premium to the Randolphs. The judgment will provide that it is conditioned upon the $76 being repaid to the company within 20 days. As to the relief sought by plaintiff for rescission and for damages, there will be a judgment dismissing the complaint.