274 N.J. Super. 364 (1994)
644 A.2d 142
JOANNE EASON, PLAINTIFF-APPELLANT,
v.
NJAFIUA AND TOWNSHIP OF MONTCLAIR, DEFENDANTS-RESPONDENTS, AND REGENCY INSURANCE, PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE CO., AS SERVICING CARRIER FOR THE NJAFIUA, AND CHESTER JOHNSTONE, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued June 1, 1994.
Decided June 30, 1994.
*365 Before Judges PRESSLER, DREIER and KLEINER.
*366 Cynthia N. McKee argued the cause for appellant (Ms. McKee, on the brief).
Steven J. Sloan argued the cause for respondent New Jersey Automobile Full Insurance Underwriting Association (Siegel & Siegel, attorneys; Randie L. Ehrlich, on the brief).
John C. Kennedy argued the cause for respondent Township of Montclair (O'Donnell, Kennedy, Vespole, Piechta & Trifiolis, attorneys; Mr. Kennedy, of counsel and on the brief).
The opinion of the court was delivered by DREIER, J.A.D.
Plaintiff, Joanne Eason, appeals from the involuntary dismissal of her claims against defendant Township of Montclair on the basis of the immunity provided by the New Jersey Tort Claims Act. She also appeals from a summary judgment enforcing a twenty percent "reimbursement set-off" for non-economic losses contained in plaintiff's insurance policy.
On June 4, 1989, plaintiff was driving north on Willowdale Avenue in Montclair. She had not driven on Willowdale in the last twenty years and did not know whether it was controlled by a stop sign at the intersection of Washington Avenue. She knew, however, that most intersections in Montclair were governed by some form of traffic control. ("I knew that most of Montclair streets either went straight through or there was a stop light or stop sign"). As she approached the intersection, plaintiff looked for a stop sign or some other type of traffic control device, and not seeing one, proceeded into the intersection. At the same time, defendant Chester Johnstone was driving eastbound on Washington Avenue. It is undisputed that although there had been a stop sign controlling the traffic on Willowdale Avenue, the sign was missing at the time of the accident. Defendant Johnstone knew that Washington Avenue was a through street and therefore did not stop at the intersection. An accident resulted and plaintiff was severely injured.
*367 At trial, the Township moved for an involuntary dismissal of the claims against it. The trial judge granted the motion, finding the Township immune from liability under the Tort Claims Act as interpreted in Smith v. State of New Jersey, Dep't of Trans., 247 N.J. Super. 62, 588 A.2d 854 (App.Div. 1991), certif. denied, 130 N.J. 13, 611 A.2d 651 (1992). Plaintiff's appeal forces us to reexamine this court's reasoning in Smith, holding that a public entity will not be liable for its failure to replace a warning sign; our reasoning in Shuttleworth v. Conti Constr. Co., Inc., 193 N.J. Super. 469, 475 A.2d 48 (App.Div. 1984), holding that a public entity may be liable for its failure to maintain a stop sign; and the Supreme Court's treatment of a related railroad signal problem in Weiss v. New Jersey Transit, 128 N.J. 376, 608 A.2d 254 (1992).
Plaintiff also appeals from the summary judgment granted to the New Jersey Automobile Full Insurance Underwriting Association (JUA) on her complaint seeking to void the reimbursement set-off provision contained in her automobile insurance policy. Plaintiff's insurance policy, issued through the JUA, contained a provision which apparently allows the JUA to recoup up to twenty percent of any recovery for noneconomic loss. Plaintiff alleged that she did not request nor did she agree to be bound by that provision and that the inclusion of that provision resulted from the agent's fraud or unconscionable conduct. The trial court ruled that even if plaintiff's allegations of fraud and unconscionable conduct on the part of the insurer were true, a reasonable inspection of plaintiff's policy would have revealed the set-off provision. Accordingly, the trial court found that plaintiff would be bound by the terms of her policy.
On January 11, 1990, plaintiff filed her complaint charging Johnstone with negligence,[1] and also alleging that the Township of *368 Montclair was negligent in failing to replace the missing stop sign. Several months later plaintiff filed a separate action against defendants Pennsylvania National Mutual Casualty Company, the servicing carrier for the JUA and Regency Insurance Agency, the producing broker. In this complaint plaintiff sought to have the reimbursement set-off provision contained in her automobile insurance policy declared null and void. Plaintiff initially sought damages in the amount of $5,000. Fifteen months later plaintiff filed an amended complaint in the insurance action adding the JUA as a defendant and increasing the amount of damages plaintiff claimed to $2,500,000. The tort claims and the policy actions were consolidated.
Plaintiff was initially insured through Continental Casualty Company as a servicing carrier for the JUA. When the Continental policy was about to expire, plaintiff contacted Regency Insurance regarding a new policy. Plaintiff allegedly requested that her new policy contain the same coverage as her expiring policy. Although the prior policy did not have a reimbursement set-off, the application for the new policy requested such a provision. Plaintiff insists that she did not fill out the application requesting this coverage. There is support for her allegation: the application lists plaintiff as a single male although she is a divorced female; her occupation is misspelled as "auditer;" her address is misspelled as "Monclair;" the premium is added incorrectly. At oral argument on the summary judgment motion, the attorney for JUA conceded that someone other than plaintiff filled out the application.
*369 Plaintiff was, however, sent renewals of her insurance policy clearly setting forth her coverage. All of the policies stated on the second page of the declaration "REIMBURSEMENT SET-OFF APPLIES." Plaintiff acknowledges that she received at least two of these renewals, and plaintiff's premium was lower because of the set-off.
On the first day of trial, the JUA's motion to sever the issue of the validity of the reimbursement set-off from the personal injury action was granted. At that time, the JUA also moved for summary judgment, but the motion was carried for three weeks, and was then granted. Plaintiff was the first witness. At the end of her testimony, the Township successfully moved to dismiss the claims against it based on the immunity provided in the Tort Claims Act, N.J.S.A. 59:1-1 et seq. Plaintiff now appeals from the involuntary dismissal in favor of the Township and from the order granting summary judgment in favor of the JUA.

I
We first consider plaintiff's claim against the Township of Montclair for its failure to maintain or replace the stop sign. N.J.S.A. 59:4-5, Failure to provide ordinary traffic signals  Immunity, states:
Neither a public entity nor a public employee is liable under [N.J.S.A. 59:4-1 to 59:4-9] for an injury caused by the failure to provide ordinary traffic signals, signs, markings or other similar devices.
It is clear that this section provides immunity for injuries caused by the municipality's discretionary decision to provide traffic lights or signs. See Weiss v. New Jersey Transit, supra, 128 N.J. at 382, 608 A.2d 254; Kolitch v. Lindedahl, 100 N.J. 485, 496, 497 A.2d 183 (1985); Johnson v. Township of Southampton, 157 N.J. Super. 518, 522-523, 385 A.2d 260 (App.Div.), certif. denied, 77 N.J. 485, 391 A.2d 499 (1978); Aebi v. Monmouth County Highway Dep't, 148 N.J. Super. 430, 433, 372 A.2d 1130 (App.Div. 1977). The issue in this case, however, is not whether Montclair should have designated Washington Avenue as a through street, or even should have placed a stop sign on the corner; rather it is the *370 extent of the municipality's duty to maintain the signal or sign once it is installed. We therefore start with the premise that the municipality has by ordinance already determined that the traffic control device should be placed, and has secured the requisite State approval from the Commissioner of Transportation (N.J.S.A. 39:4-140), and has completed the process of placing the sign.
In Shuttleworth v. Conti Constr. Co., Inc., supra, we held that once a traffic signal has been installed, the failure to maintain it may be actionable. 193 N.J. Super. at 472-474, 475 A.2d 48. In Shuttleworth, plaintiff was injured and plaintiff's decedent was killed when their car was struck by a vehicle that had gone through a stop sign obscured by bushes, also on county property. Defendant Morris County, which was responsible for the maintenance of the sign, successfully moved for summary judgment on the basis of N.J.S.A. 59:4-5. We reversed. We there stated that if the county had decided not to put a stop sign at the intersection, that decision would have been protected. Id. at 472, 475 A.2d 48. However, once the county determined to control the intersection, it had a duty to maintain the sign and that the failure to do so could be actionable under N.J.S.A. 59:4-2. The statute provides:
A public entity is liable for injury caused by a condition of its property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:
a. a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or
b. a public entity had actual or constructive notice of the dangerous condition under section 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.
Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.
The Supreme Court in Weiss v. New Jersey Transit, supra, alluded to the facts of Shuttleworth, distinguishing Weiss from a case where "the underbrush that obscured visibility ... [had] been *371 on defendants' property and subject to their maintenance." 128 N.J. at 382, 608 A.2d 254.
Smith v. State of New Jersey, Dep't of Transp., supra, treated a similar issue. There, the plaintiffs were injured when their car collided with a tractor-trailer stopped on a four-lane highway after the driver realized that the overpass he was approaching was too low for the truck. Plaintiffs alleged that the Department of Transportation had created a dangerous condition by failing to place a sign warning of the low overpass sufficiently in advance of the overpass to enable large vehicles to exit the highway. The Department of Transportation presented evidence that there was a ground-mounted sign fifty-five to seventy feet before the last exit. Plaintiffs contended that the sign was not present, or if present, that it was not a sufficient distance before the overpass. This court affirmed the summary judgment in favor of the Department of Transportation, finding that it was immune from liability on the basis of the Tort Claims Act, N.J.S.A. 59:4-5. 247 N.J. Super. at 69, 588 A.2d 854. The court found that if the sign existed on the day of the accident, its placement could not create liability. The court then reasoned that because there is immunity for not placing a sign initially and for where the sign is placed, there must also be immunity for not replacing a missing sign. Ibid. In so deciding, Smith also read Shuttleworth narrowly, i.e., focusing on a public entity's responsibility to maintain the bushes on its property so that traffic signs are not obscured. While we agree that there is clear immunity "for not posting a sign initially," we do not agree that "immunity also exists for not replacing a missing sign." Ibid. This statement is too broad since it encompasses traffic control devices that have been both authorized and placed by a governmental unit, and are required by State law and local ordinance to be so placed. N.J.S.A. 39:4-141. It would be nonsensical to provide liability for obscuring the sign, but not for not replacing a sign that had fallen or otherwise could not be seen by an approaching driver.
*372 There is no question that the governmental unit has absolute immunity both for its decision whether to place the device, and for its timing of when to do so. Kolitch v. Lindedahl, supra, 100 N.J. at 496, 497 A.2d 183. "Thus, both the decision and the act of implementation are one and the same for the purpose of the statute." Ibid. (quoted in Smith, supra, 247 N.J. Super. at 69, 588 A.2d 854). Where we part with Smith is the extension of this immunity to the maintenance of the control after the decision has been fully implemented, and no policy decision has been made to remove the device.
The New Jersey Supreme Court has not squarely addressed a public entity's liability for failure to maintain a sign once it has been installed.[2] It has, however, suggested that such failure may be actionable. In Weiss v. New Jersey Transit, supra, plaintiff's decedent was killed when her car was struck by a train at a "notoriously dangerous" railroad crossing. The accident occurred eleven days before the traffic controls at the crossing became operational following eight years of bureaucratic red-tape. The trial court found that the public defendants were immune under N.J.S.A. 59:4-5, failure to place a traffic signal, and under N.J.S.A. 59:4-6, plan and design immunity. The Appellate Division, 245 N.J. Super. 265, 584 A.2d 1359 (1991), reversed, finding that the dangerous condition was caused not by the absence of the traffic signal, but rather by the eight-year delay in implementing a plan to install the light. We also held that plan and design immunity did not apply as the accident was alleged to have been caused by the original, inadequate warning system and there was no evidence that system was the result of an approved plan or design.
*373 The Supreme Court reversed the Appellate Division and reinstated the decision of the trial court. The Court reasoned that the cause of the accident was the absence of an authorized and installed traffic signal, and that the case was thus governed exclusively by the immunity of N.J.S.A. 59:4-5. It is clear, however, that the Supreme Court focused on the design and implementation immunity described in Kolitch v. Lindedahl, supra. The immunity included the "bureaucratic delay" in completing the project, 128 N.J. at 380, 608 A.2d 254, and extended to the delayed implementation of the plan to upgrade the signals at the grade crossing. The Court did, however, note that
[w]ere there any other triable issue of independent negligence  for example, had the underbrush that obscured visibility at the crossing been on defendants' property and subject to their maintenance, or had there been any other condition of the property that caused the dangerous condition to exist, e.g., a pothole of long duration, an oil spill on the roadway, or a broken traffic light, Bergen v. Koppenal, 52 N.J. 478, 246 A.2d 442 (1968), the complaint might have stated a cause of action.
[Weiss, supra, 128 N.J. at 382, 608 A.2d 254 (emphasis added)].
As we noted in Shuttleworth, prior to the adoption of the Tort Claims Act, New Jersey case law provided immunity for the discretionary act of deciding whether or not to place or remove a traffic control device at a particular intersection. Hoy v. Capelli, 48 N.J. 81, 91, 222 A.2d 649 (1966). The Tort Claims Act, N.J.S.A. 59:4-5, codified this case law. See 1972 Task Force Comment to N.J.S.A. 59:4-5; Spin Co. v. Maryland Casualty Co., 136 N.J. Super. 520, 524-525, 347 A.2d 20 (App.Div. 1975). The maintenance of public property was not, however, subject to this same blanket immunity. Instead, a public entity could be liable for a dangerous condition of its property if its action or failure to act was palpably unreasonable. See Bergen v. Koppenal, supra, 52 N.J. at 480, 246 A.2d 442. This standard was also codified in the Tort Claims Act. See N.J.S.A. 59:4-2; 1972 Task Force Comment to N.J.S.A. 59:4-2. Also the Tort Claims Act preserved liability for a public entity's failure to provide emergency signs or devices to warn of dangerous conditions. N.J.S.A. 59:4-4. Thus the distinction in Shuttleworth between discretionary decisions and those simply requiring the allocation of resources is well-documented *374 in the case law which formed the basis for the Tort Claims Act.
Moreover, the Supreme Court has recently suggested that this distinction is viable. In Weiss v. New Jersey Transit, supra, the Court, while declining to hold a public defendant liable for the failure to install a traffic light, nevertheless found that it could be liable for dangerous conditions on its property. 128 N.J. at 382, 608 A.2d 254. Among the conditions the Court cited as actionable were a pothole of long duration, an oil spill, or "a broken traffic light." Ibid. In the case before us, the failure to maintain the stop sign is much like the failure to maintain a broken traffic light. The Township, with the State's concurrence, placed the stop sign at the intersection because they recognized that the intersection was dangerous. Once that determination has been made, the Township should maintain the stop sign in a manner which is not palpably unreasonable.
After the municipality has both determined by ordinance to place, and has actually installed the traffic sign, its temporary absence could also be considered an emergency requiring the municipality to act, and for which the municipality has no immunity. N.J.S.A. 59:4-4. The statute states:
Subject to section 59:4-2 of this act, a public entity shall be liable for injury proximately caused by its failure to provide emergency ... signs ... or other devices if such devices were necessary to warn of a dangerous condition which endangered the safe movement of traffic and which would not be reasonably apparent to, and would not have been anticipated by, a person exercising due care.
The experience of plaintiff in this case provides an example of why the emergency warning signal statute should apply. Plaintiff testified that she knew that the intersections in Montclair were generally controlled by stop signs or traffic lights. When she approached the intersection of Washington Avenue and her street was not controlled by a stop sign or traffic light she assumed that the intersecting street would be so controlled. She therefore looked both ways and saw no oncoming traffic, although her vision to her left was blocked by some hedges. She proceeded across Washington Avenue only to be struck by a vehicle coming from *375 her left. The missing stop sign was a "dangerous condition which endangered the safe movement of traffic." An emergency signal or sign indicating that plaintiff must stop (even if it was just a cardboard replica of the stop sign attached to a wooden stake) was needed.[3]
Whether we view the municipality's duty as the maintenance of its property under N.J.S.A. 59:4-2 or to provide for an emergency sign, N.J.S.A. 59:4-4, the involuntary dismissal of plaintiff's claims against the Township on the basis of the Tort Claims Act was in error.

II
After the dismissal of the claims against the municipality, the trial court granted summary judgment in favor of the JUA, dismissing plaintiff's complaint which sought to void the twenty percent reimbursement set-off provision contained in her insurance policy.[4]
*376 Generally, in the absence of fraud or unconscionable conduct, an insured is bound by the terms of a policy that she has received and had an opportunity to read. Heake v. Atlantic Casualty Ins. Co., 15 N.J. 475, 483, 105 A.2d 526 (1954). In opposition to JUA's motion for summary judgment, plaintiff argued that the question of whether the circumstances surrounding the execution of the insurance application constituted fraud or unconscionable conduct presented an issue for a jury.[5] However, even in the case of unconscionable conduct or fraud, an insured must make "such examination as would be reasonable for the *377 average person under the particular circumstances." Harr v. Allstate Ins. Co., 54 N.J. 287, 310, 255 A.2d 208 (1969). The insured is then bound to that which a reasonable inspection would have alerted her to. Ibid. See also Portella v. Sonnenberg, 74 N.J. Super. 354, 361, 181 A.2d 385 (App.Div. 1962). Plaintiff states that during the three years that she held the policy, she never noticed the set-off language. A reasonable inspection would have disclosed that the second page of the declaration stated "REIMBURSEMENT SET-OFF APPLIES." Plaintiff is bound accordingly.
We are also more than a little confused concerning plaintiff's attribution of the alleged fraud on the part of the producing broker, defendant Regency, to either the servicing carrier or the JUA. Any claim plaintiff has concerning fraud appears to be limited to the representations made by Regency, and there has been no proof of any agency relationship between Regency and JUA's servicing carrier, Pennsylvania National Mutual Casualty Co. Plaintiff claims that several years before this accident she had switched insurers and had given her earlier policy to the agent for a quote. Since the quotation was lower, she switched insurers. The agent, she claims, never told her that he was applying for a twenty percent reduction in PIP benefits, which explains the lower premium. In the following years she assumed she was getting the same insurance as she had before and did not check the policies. The agent's alleged fraud in submitting an unauthorized application to the carrier is described earlier.
Irrespective of the JUA's freedom from responsibility for the twenty percent claimed by plaintiff on the basis of the plain language of the policies, it merely acted on the form submitted by the producing broker. Plaintiff's claim would lie against the agent *378 or broker who was also a party to this action.[6] Absent some showing of an agency relationship by Regency on behalf of Pennsylvania National, JUA would not be chargeable with Regency's actions. Cf. Clendaniel v. New Jersey Mfrs. Ins. Co., 96 N.J. 361, 370, 476 A.2d 263 (1984) (under the former Assigned Risk Plan, "the producer of an assigned risk policy is the agent of the insured and not of the insurer."); Pearson v. Selected Risks Ins. Co., 154 N.J. Super. 240, 245, 381 A.2d 91 (Law Div. 1977); Lilly v. Allstate Ins. Co., 218 N.J. Super. 313, 319-322, 527 A.2d 903 (App.Div. 1987). Under the New Jersey Automobile Full Insurance Availability Act, the successor to the Assigned Risk Plan, the rules are the same. See N.J.S.A. 17:30E-10.
Therefore, even accepting plaintiff's allegations of fraud and unconscionable conduct as true, Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 75, 110 A.2d 24 (1954), plaintiff (1) is bound to those terms and conditions which a reasonable inspection of the policy would have revealed, and (2) cannot attribute Regency's alleged fraud to the JUA. The trial court did not err in granting summary judgment to the JUA.
The voluntary dismissal of plaintiff's claims against the Township is reversed and the matter is remanded for trial on that issue. We affirm the grant of summary judgment in favor of the New Jersey Automobile Full Insurance Underwriting Association.
NOTES
[1] Although the court had initially denied a motion to bifurcate the issues of liability and damages, on the third day of trial, the trial judge granted defendant Johnstone's renewed motion to bifurcate based on his inability to have his expert medical witness ready. The jury returned a verdict attributing sixty percent of the negligence to Johnstone and forty percent of the negligence to plaintiff. After Johnstone's unsuccessful motions for a new trial and for an order reversing the dismissal entered in favor of the Township, plaintiff settled her case as to Johnstone only.

Johnstone also filed a complaint against the Township of Montclair, plaintiff and the owner of the car plaintiff was driving. On the Township's motion, the court consolidated the cases on August 6, 1990. Johnstone's case against plaintiff, the Township and the owner was settled and was subsequently dismissed.
[2] The New Jersey Supreme Court is, however, currently considering this issue. In Civalier v. Estate of Margaret Trancucci, A-93/120/121/122/143, three people were killed and a fourth injured after their car was hit by a truck in an intersection. The street the car was travelling on should have been controlled by a stop sign but the sign was missing. As in the present case, the trial court granted summary judgment finding that the public entity was immune under the Tort Claims Act. 137 N.J.L.J. 24 (May 9, 1994).
[3] The Township does not argue that the allocation of resources barred or delayed the replacement of the sign. In fact, a police officer was assigned to guard the intersection immediately after the accident, and the sign was replaced in hours.
[4] Although it is not entirely clear from the record, it appears that the reimbursement set-off provision in plaintiff's policy is the one contemplated by N.J.S.A. 39:6A-4.3c.

N.J.S.A. 39:6A-4.3. Personal injury protection coverage deductibles, exclusions and setoffs. With respect to personal injury protection coverage provided on an automobile in accordance with [N.J.S.A. 39:6A-4], the automobile insurer shall, at appropriately reduced premiums, provide the following coverage options:
....
c. A setoff option entitling an automobile insurer paying medical expense benefits under section 4 to reimbursement from, and a lien on, any recovery for noneconomic loss by an injured party pursuant to an arbitration award, judicial judgment or voluntary settlement for the amount of the medical expense benefits paid, not to exceed 20% of the amount of the award, judgment or settlement, including recoveries under uninsured and underinsured motorist coverage, except that if, at the time of the award, judgment or settlement, the amount of medical expense benefits does not exceed 20% but additional expense benefits of an indeterminate amount are anticipated, the amount of the setoff shall be 20% of the award, judgment or settlement, with the difference between the value of the 20% and the amount of medical expense benefits previously paid to be placed in an interest bearing trust account for use to indemnify the insurer paying the medical expense benefits, as the benefits are paid. Attorney's contingent fees shall be computed on the amount of the award, judgment or settlement, less the amount of the setoff, which setoff shall be, if the medical expense benefit claim of the injured person, as of the date of the award, judgment or settlement is made, is: (1) closed, the amount of medical expense benefits paid, not to exceed 20% of the award, judgment or settlement, or (2) open, 20% of the award, judgment or settlement. Under a contingent fee arrangement, the attorney shall also be entitled to reimbursement out of the amount of the setoff for costs actually incurred in the institution and prosecution of the claim or action, which amount shall in no instance exceed 10% of the amount of the setoff, in a manner to be prescribed by the Supreme Court. Nothing in this subsection shall be construed to prohibit an attorney representing the injured party from recovering from the insurer providing personal injury protection benefits the reasonable cost of any legal services rendered to that insurer primarily in conjunction with the setoff reimbursement.
This provision has since been deleted. See P.L. 1988, c. 119.
[5] Specifically, plaintiff argued that the mistakes on the application and her allegation that she had not seen nor signed the application were indicia of unconscionable conduct. However, the JUA conceded and the trial judge accepted that plaintiff did not complete the application. Plaintiff also argued that it was unconscionable for the insurer to change her coverage to include the reimbursement set-off after she had specifically requested the same coverage as in her previous policy. It appears, however, that plaintiff made other changes to her insurance policy when she changed insurance companies. Note for example that plaintiff dropped the collision and comprehensive coverage that she had previously carried.
[6] Regency apparently was never served, or if served, no further action was taken against it.