651 A.2d 100

JOANNE EASON, PLAINTIFF-APPELLANT, v. NJAFIUA AND TOWNSHIP OF MONTCLAIR, DEFENDANTS-RESPONDENTS, AND REGENCY INSURANCE, PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE CO., AS SERVICING CARRIER FOR THE NJAFIUA, AND CHESTER JOHNSTONE, DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued June 1, 1994—Decided June 30, 1994—Remanded by the Supreme Court November 1, 1994—Supplemental Memoranda Submitted December 9, 1994—Decided January 3, 1995.

*Cynthia N. McKee,* attorney for appellant (*Ms. McKee,* on the brief).

*Siegel & Siegel,* attorneys for respondent New Jersey Automobile Full Insurance Underwriting Association.

*O'Donnell, Kennedy, Vespole, Piechta & Trifiolis,* attorneys for respondent Township of Montclair *(John C. Kennedy,* on the brief).

Before Judges PRESSLER, DREIER and KLEINER.

The opinion of the court was delivered by

DREIER, P.J.A.D.

Defendant Township of Montclair appealed to the New Jersey Supreme Court from our earlier decision of June 30, 1994, *Eason v. NJAFIUA,* 274 *N.J.Super.* 364, 644 *A.*2d 142 (App.Div.1994). While this matter was pending on appeal, the Supreme Court decided the case of *Civalier v. Estate of Trancucci,* 138 *N.J.* 52, 648 *A.*2d 705 (1994), which, as we had noted in our opinion, involved the same issue as a matter of first impression. *Eason v. NJAFIUA, supra,* 274 *N.J.Super.* at 372 n. 2, 644 *A.*2d 142. The Supreme Court, without argument, has now remanded this matter to us for reconsideration in light of the *Civalier* decision, 139 *N.J.* 182, 652 *A.*2d 171.

In our earlier opinion of June 30, 1994, we based our reversal of the involuntary dismissal against the Township of Montclair on two principles. First, we found that the replacement of the stop sign on Willowdale Avenue was merely a ministerial act since the municipality had already determined legislatively, with the approval of the State Commissioner of Transportation, that Washington Avenue was a through street at the intersection in question. Thus, we reasoned, the replacement of the sign within a reasonable time after it had been destroyed was merely a failure of maintenance and did not involve a determination whether a stop sign should be placed at the intersection. *Id.* 274 *N.J.Super.* at 369–374, 644 *A.*2d 142.

The second basis for our decision was that "[p]laintiff testified that she knew that the intersections in Montclair were generally controlled by stop signs or traffic lights. When she approached the intersection of Washington Avenue and her street was not controlled by a stop sign or traffic light she assumed that the intersecting street would be so controlled." *Id.* at 374, 644 *A.*2d 142. Thus we reasoned: "The missing stop sign was a 'dangerous condition which endangered the safe movement of traffic.' An

emergency signal or sign indicating that plaintiff must stop (even if it was just a cardboard replica of the stop sign attached to a wooden stake) was needed." *Id.* at 375, 644 *A.*2d 142.

In *Civalier*, the Supreme Court concurred with our reliance theory based upon *N.J.S.A.* 59:4-4 which establishes liability for a failure to provide emergency signals or signs necessary to warn of a dangerous condition which would not be reasonably apparent to a person exercising due care. 138 *N.J.* at 60, 648 *A.*2d 705. The Court limited its imposition of liability to cases in which a motorist relies upon the proper functioning or presence of previously posted signals. *Id.* at 64, 648 *A.*2d 705.

> [T]he element of a driver's reliance on the sign's presence may create a dangerous condition of property for the purposes of *N.J.S.A.* 59:4-4 when the signal is malfunctioning or absent. Therefore we hold that a public entity is liable for its failure to replace a traffic sign only when the motorist's reliance on the previous presence of the sign caused the claimant's injuries.
> [*Id.* at 64-65, 648 *A.*2d 705.]

The Court cited our earlier decision in this case as authority for the quoted proposition. *Id.* at 65, 648 *A.*2d 705.

The Supreme Court's citation to our prior opinion, however, included additional considerations which affect the municipality's "emergency" liability. The Court first noted that we had "held that a driver who had relied on the presence of a stop sign could assert a claim under *N.J.S.A.* 59:4-4." *Id.* at 65, 648 *A.*2d 705. But the Court then further quoted from our prior opinion stating " '[a]fter the municipality has both determined by ordinance to place, and has actually installed the traffic sign, its temporary absence could also be considered an emergency requiring the municipality to act and for which the municipality has no immunity. *N.J.S.A.* 59:4-4.' " *Ibid.* (quoting *Eason v. NJAFIUA, supra,* 274 *N.J.Super.* at 374, 644 *A.*2d 142). The Court further explained that "[i]n a sense, we have here a broken traffic signal. Like the misdirected light in *Bergen* [v. Koppenal], *supra,* 52 *N.J.* 478 [246 *A.*2d 442] [1968], the conditions here lulled [plaintiff] into a false sense of security." *Id.* at 66, 648 *A.*2d 705. After distinguishing other authorities, the Court repeated that "this case concerns a failure to replace a traffic sign after the motoring public had come to rely on it." *Ibid.*

In answering the dissent's arguments, the majority looked to California law and reiterated "[t]hat only those who are injured

because of a motorist's reliance will recover (whether they are out-of-towners or residents) is simply a consequence of the rule itself, recognized in the cases cited in the commentary and by the courts of California." *Id.* at 67–68, 648 *A.*2d 705.

It is clear, therefore, that the sole basis for liability on remand must be reliance upon the emergency or "trap" liability statute, *N.J.S.A.* 59:4–4. The Supreme Court made it clear, however, that plaintiff's reliance upon traffic controls at the intersection need not be based upon plaintiff's particular local knowledge of the former presence of the precise stop sign but may be the reliance of an out-of-towner upon the presence of duly authorized traffic controls marking the through streets in the community. *Id.* at 67–68, 648 *A.*2d 705. As plaintiff stated, " 'I knew that most of Montclair streets either went straight through or there was a stop light or stop sign.' " *Eason v. NJAFIUA, supra,* 274 *N.J.Super.* at 366, 644 *A.*2d 142.

On remand, since the governing law has been redefined, the parties may require a brief period of reciprocal discovery before the retrial. The trial judge shall enter any appropriate order and supervise the discovery to the end that there is no undue delay in reaching a final resolution of this matter.

This matter is again remanded to the Law Division. The remand in our opinion of June 30, 1994 is modified as set forth herein and, of course, by any other appropriate references in the *Civalier* decision.