153 N.J. Super. 563 (1977)
380 A.2d 724
MARTHA WEATHERS, PLAINTIFF-RESPONDENT,
v.
HARTFORD INSURANCE GROUP, DEFENDANT-APPELLANT, AND DON STILL AGENCY, INC., DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Submitted October 12, 1977.
Decided October 25, 1977.
*565 Before Judges MATTHEWS, CRANE and ANTELL.
Messrs. Kisselman, Deighan, Montano & Summers, attorneys for appellant Hartford Insurance Group (Mr. Neil F. Deighan, Jr., of counsel and on the brief).
Mr. Edward J. Brady, attorney for respondent.
The opinion of the court was delivered by MATTHEWS, P.J.A.D.
Defendant Hartford Insurance Group (Hartford) appeals from a judgment entered in the Chancery Division holding it liable to plaintiff for coverage under an automobile insurance policy issued to plaintiff by it through defendant Don Still Agency (Agency). Hartford contends that the policy had been cancelled for nonpayment of premiums on May 22, 1974 and thus refused to pay any claim made by plaintiff which arose out of an accident which occurred on May 24, 1974. Plaintiff claims she never received the notice of cancellation required by N.J.S.A. 17:29C-8 and thus the cancellation was ineffective. She also argues that her payment of the premium to her broker, the Agency, on May 23, 1974, operated to continue coverage under the policy pursuant to the provisions of N.J.S.A. 17:22-6.2a.
The trial judge agreed with plaintiff's position and found that Hartford was liable to her under the terms of the policy issued, and awarded counsel fees and costs.
Defendant Agency failed to answer plaintiff's complaint or Hartford's crossclaim for indemnification, and defaults were entered on both the complaint and the crossclaim.
Plaintiff originally procured her policy with Hartford through the Agency in October 1972. The policy was subsequently renewed in October 1973 for an additional year. The payments for the renewal policy were to be paid in three installments.
Hartford established that on all installment payment policies certain procedures are customarily followed. A reminder *566 notice is mailed out to the insured 30 days prior to the installment payment due date. A copy of the reminder notice is retained in Hartford's files. If payment of the installment is not received within seven days of the due date, the installment notice is stamped unpaid and sent to the appropriate department where the insured's file is prepared for a cancellation notice. The cancellation notice indicates the name and address of the insured, the amount of time given the insured before cancellation is effective (a minimum of ten days) and the effective date of the cancellation.
The last section of the multi-copy cancellation notice is termed a certificate of mailing, which indicates that correspondence is being sent from Hartford to the named insured at the indicated address. A Hartford clerk puts the insured's copy of the cancellation notice in a window envelope. The envelope and the certificate of mailing are taken to the postoffice. The postal clerk verifies, by means of a dated stamp, that the name appearing on the window envelope corresponds to the name and address on the certificate of mailing. Certificates of mailing are utilized only for cancellation notices.
Hartford claims this procedure was used when plaintiff failed to remit her second installment payment which was due January 1, 1974. A reminder notice and a cancellation notice were allegedly sent, but she denied ever receiving anything from Hartford directly. In any event, Hartford received plaintiff's second installment premium payment on February 13, 1974, 12 days before the effective date of cancellation, and her policy was reinstated.
Plaintiff denied receiving a reminder notice with respect to the final April 30, 1974 installment or the cancellation notice indicating that her policy would be cancelled for nonpayment of premium effective May 22, 1974. Instead, she stated that she received a reminder from the Agency on May 15 or 16, 1974 indicating that her payment was due on May 20 or 21. She claimed that she called the Agency indicating that she could not make payment until Friday, May 23. *567 Since she was not told payment could not be accepted on that date, she brought the required amount to the Agency on May 23 in cash and received a receipt for the final payment on her insurance policy. The following day she was involved in the automobile accident which Hartford subsequently refused to defend on the ground that the policy had been cancelled.
N.J.S.A. 17:29C-10 provides that:
Proof of mailing of notice of cancellation, or of intention not to renew or of reasons for cancellation, to the named insured at the address shown in the policy, shall be sufficient proof of notice.
Hartford argues that its proof of mailing, in the form of the certificate of mailing described above, constitutes sufficient proof that plaintiff was given the required notice of cancellation, making that cancellation effective regardless of her receipt of the cancellation notice itself.
In Womack v. Fenton, 28 N.J. Super. 345 (App. Div. 1953), defendant's automobile liability insurer refused to pay the expenses of defendant's defense arising out of an automobile accident on the ground that the policy had been cancelled by a notice of cancellation it had mailed to defendant. The insurance policy contained a provision permitting cancellation by mailing to the insured a written notice thereof and providing that mailing of the notice shall be sufficient proof of notice. This court observed that the insurer provided proof of proper mailing to defendant and noted:
It has been held in accord with the weight of the pertinent authorities that where the mailing of the written notice of cancellation in strict conformity with the expressed essentials of such a provision is established by proof, the cancellation is effectual without evidence of the receipt of the notice by the insured. [at 348]
There was consequently no error in the trial judge's refusal to permit defendant to testify as to his non-receipt of the cancellation notice.
*568 Werner v. Commonwealth Cas. Co., 109 N.J.L. 119 (E. & A. 1932), may be distinguished. There, plaintiff's insurance policy contained a provision that notice of cancellation in writing either mailed or delivered to the address of the insured shall be deemed sufficient notice of cancellation. However, the trial judge recognized plaintiff's claim of non-receipt because the insurance company had sent the notice of cancellation by registered mail rather than ordinary mail as contemplated by the insurance policy provision. The judge observed that had the company sent the notice by regular mail it would have been forwarded to the address indicated regardless of whether plaintiff was personally available to receive it. Cancellation would than have been effective upon proof of mailing through ordinary mails. However, since a registered letter contemplates personal service the court entertained plaintiff's claim that he did not personally receive it. 109 N.J.L. at 121-22. See, also, Annotation, 64 A.L.R.2d 982, §§ 14-18 (1959).
Here, Hartford proved it mailed a cancellation notice to plaintiff's correct address, which gave her ten days notice of the termination of her insurance contract. According to N.J.S.A. 17:29C-8 and 17:29C-10, this is sufficient proof that plaintiff was given the proper notice. Thus, any claim of non-receipt is irrelevant since proof of mailing, not proof of receipt is the determinative factor.
The trial judge, however, concluded that the insurance company was liable by virtue of the Agency's action in accepting plaintiff's late payment one day after the effective date of the cancellation. Hartford contends that once an insurance policy is effectively cancelled by the action of the insurer, an agent may not vitiate that cancellation or reinstate the policy by any conduct on its part, the provisions of N.J.S.A. 17:22-6.2a notwithstanding. That statute provides that an insurer which delivers a contract of insurance (certain types excepted) through a broker automatically authorizes that broker to receive premiums on its behalf as long as the premium payment "is received by such *569 broker within 90 days after the due date of such premium or installment thereof." The trial judge determined that the statute permitted a broker to accept a payment within 90 days of the due date even if the policy had been cancelled by the insurer during that period. Hartford challenges the trial judge's interpretation of that statute.
The purpose of N.J.S.A. 17:22-6.2a is to protect the insurance-buying public "from the misappropriation, conversion, or other misconduct of an insurance broker in those instances where an insurer uses the broker to effect the delivery of the policy of insurance and to collect the premiums due for it." Kubeck v. Concord Ins. Co., 103 N.J. Super. 525, 533 (Ch. Div. 1968), aff'd o.b. 107 N.J. Super. 510 (App. Div. 1969). There, plaintiff paid the annual premium for his automobile insurance policy in full to the broker when the policy was issued. When the broker failed to remit the premium to the company the company cancelled the policy. The broker, however, continued to assure plaintiff that the policy was still in effect and that the issuance of the cancellation notice was due to a clerical error. When plaintiff became involved in an automobile accident which the insurance company refused to defend, plaintiff instituted an action to compel it to defend. Finding that the premium had been paid by plaintiff to the broker within the 90-day period stipulated in the statute, the judge voided the cancellation of the policy and held that it was in effect at the date of the accident.
In the present case the policy was cancelled, not because of some "misappropriation, conversion or other misconduct of an insurance broker" as in Kubeck, but because of the insured's own failure to make timely payment of the premium due. The statute imposes a duty upon the broker to collect and remit premiums due on the policy. However, it does not give the broker the right to collect and remit premiums due on a policy effectively cancelled because of fault of the insured. Nor does it give the broker authority *570 to reinstate cancelled policies or to extend the time available to an insured to pay the policy premium. Cf. Lezak v. National Grange Mut. Ins. Co., 233 N.Y.S.2d 607 (Sup. Ct. 1962), and Standard Acc. Ins. Co. v. Roth, 28 Misc.2d 1080, 213 N.Y.S.2d 721 (Sup. Ct. 1961) (construing the New York statute, § 121 Insurance Law, McKinney's Consol. Laws, c. 28, which is virtually identical in language to N.J.S.A. 17:22-6.2a.)
We do not perceive the purpose of N.J.S.A. 17:22-6.2a to extend liability on the part of the insurance company to a plaintiff where the policy has been effectively cancelled before the insured tenders the required payment thereon.
Reversed.