218 N.J. Super. 313 (1987)
527 A.2d 903
FREDERICK W. LILLY, JR., PLAINTIFF-APPELLANT,
v.
ALLSTATE INSURANCE COMPANY, DEFENDANT-RESPONDENT, AND ROBERT BEUTTEL, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Submitted May 20, 1987.
Decided June 17, 1987.
*314 Before Judges FURMAN, SHEBELL and STERN.
Becker & Lands, attorneys for appellant (Alan M. Lands, on the brief).
Horn, Kaplan, Goldberg, Gorny & Daniels, attorneys for respondent (Edward Tucker, on the letter-brief).
The opinion of the court was delivered by SHEBELL, J.A.D.
*315 Plaintiff, Frederick W. Lilly, Jr., appeals from orders granting summary judgment to defendant, Allstate Insurance Company.
Plaintiff filed a three-count complaint against defendants, Allstate and Beuttel. Count one alleged that plaintiff paid over 21% of the annual premium on the policy and therefore should be covered for that percentage of the annual term, which would include the date of the accident. Count two alleged that before the accident Beuttel told plaintiff that because he paid the additional premium the insurance would not be cancelled, and therefore coverage existed. Count three alleged that Beuttel misadvised him on how to avoid cancellation of the insurance policy and that Allstate was liable for Beuttel's negligence since Beuttel was Allstate's agent. The complaint alleged that plaintiff sustained $4,687 in medical expenses. It demanded judgment declaring that Allstate provide liability and no-fault coverage, as well as damages, attorneys' fees and interest. Allstate and Beuttel filed a joint answer which denied liability, and also denied that Beuttel was an agent, employee or representative of Allstate. Beuttel settled with plaintiff for an undisclosed amount.
On February 11, 1984 plaintiff procured an automobile insurance policy through defendant, Robert Beuttel. The policy was issued in accordance with the New Jersey Automobile Full Insurance Availability Act, N.J.S.A. 17:30E-1 et seq., the successor to the assigned risk plan. Plaintiff filled out a form entitled "New Jersey Automobile Full Insurance Underwriting Association Application." The form recited a total premium of $733, plus $12 for "installment fees." Plaintiff selected the 25% payment option, under which he was required by regulation to pay an initial installment of 25% of the total annual premium. However, plaintiff paid to Beuttel and Beuttel accepted only $160, 21% of the total premium of $745. The form contained a printed "Applicant's Statement," which asserted *316 that the applicant understood that the "Producer" was "not acting as an agent of any company for the purpose of this insurance." On that day plaintiff was given a temporary State of New Jersey insurance identification card.
Although the answer filed on behalf of Allstate and Beuttel denied that Beuttel was an agent, employee or representative of Allstate, Beuttel stated in his deposition that he was an Allstate agent and had been one for several years and that he produces insurance "[s]olely for Allstate." According to an Allstate customer service representative, Allstate agents are not permitted to accept less than 25% of the premium on such a policy although the $160 paid by plaintiff on February 11, 1984 constituted less than 25% of the quoted annual premium. Despite the underpayment, Allstate issued plaintiff a policy with an effective date of February 12, 1984.
On March 6, 1984 Allstate mailed plaintiff a notice of cancellation for nonpayment of premium, reflecting an amount past due of $26, and informing plaintiff that the insurance would stop at 12:01 a.m. on March 26, 1984. The notice stated: "If you desire to continue your insurance protection, return this part of the notice with your payment for the amount shown as past due. It must reach us prior to the date shown below."
Plaintiff alleged that he received the notice on or about the 26th of March. Within a day or two plaintiff went to Beuttel's office and paid the additional $26 to a secretary. The secretary allegedly told Beuttel that when she received the payment and cancellation notice, she called Allstate to find out if she could accept the money and was told by an Allstate representative that it would be all right. Therefore, she took the payment and told plaintiff he was covered. Allstate posted the cancellation on March 31, 1984, not having received the money from Beuttel by that date. Allstate denied coverage when plaintiff was involved in an automobile accident on April 4, 1984, about two months after plaintiff procured the policy.
*317 Plaintiff contends that since he paid approximately 21% of the policy premium, the policy should be deemed in effect for that portion of the year, providing coverage until late April 1984, after the accident. Plaintiff relies on Weathers v. Hartford Ins. Group, 77 N.J. 228 (1978), rev'g 153 N.J. Super. 563 (App.Div. 1977). Allstate points out that the section of Weathers that plaintiff relies upon represented the views of only two members of the Court.
In Weathers the insured elected to pay the policy premium in three installments. The policy commenced on October 30, 1973. By May 1974 plaintiff had paid 70% of the premium. The insurer allegedly sent notice cancelling the policy as of May 22, 1974 if plaintiff did not pay the third installment. The insured paid that installment to the broker on May 23, 1974. 77 N.J. at 230-231. An accident occurred the next day and the insurer refused to accept the payment and denied coverage.
Before the trial court Weathers made two arguments: (1) the notice of cancellation was ineffective because it was never received and (2) by statute, payment of the premium to the broker the day before the accident amounted to payment to the insurer. The trial court rejected the former argument, reasoning that the insurer's proof of mailing was sufficient, but agreed with plaintiff's second contention. On appeal we disagreed with the trial court and held that the statute did not permit the broker to bind the insurer by accepting payment. 153 N.J. Super. at 569-570. Our Supreme Court reversed holding unanimously that plaintiff raised a fact question concerning whether the insurer followed the proper cancellation procedures. 77 N.J. at 234. However, Chief Justice Hughes and Justice Pashman thought it unconscionable that the insurer could cancel the policy as of May 22, 1974 when plaintiff had paid 70% of the premium. Id. at 237-245. They felt coverage should not expire until the prorated premium had been earned. Id. at 244. The two Justices urged the Commissioner of Insurance to consider the rule they advocated. Id. at 245.
*318 In 1979 the Commissioner of Insurance proposed a rule generally adopting the recommendations of the two Justices. See 11 N.J.R. 142 (Mar. 8, 1979). That rule, which was adopted on April 19, 1979, 11 N.J.R. 250-251 (May 10, 1979) (formerly codified at N.J.A.C. 11:3-7.8(b)), stated:
The effective date of the cancellation of a policy for nonpayment of premium shall not be earlier than 10 days prior to the last full day for which premium received by the company prior to the date of preparation of the cancellation notice, would pay for coverage on a pro rata basis, in calculating the effective date of the cancellations as provided in this section, the premium applicable to the coverages provided by the policy and the premium received by the company at the time cancellation notice was prepared shall be the premium used for the calculation and determination of such effective date.
However, the proposed regulation had the specific exception that "[t]his rule shall not apply to deposits accompanying New Jersey automobile insurance plan applicants which are insufficient under approved plan rules." N.J.A.C. 11:3-7.8(e). These rules were subsequently re-codified. 17 N.J.R. 708-709 (Mar. 18, 1985) (codified at N.J.A.C. 11:3-7.5(b) & (e)).
If plaintiff had made an initial deposit of $186, rather than $160, he would normally have been covered for 25% of the year. N.J.A.C. 11:3-7.6(b). However, since the rule does "not apply to deposits accompanying New Jersey Automobile Insurance Plan applications which are insufficient under Plan Rules ...," N.J.A.C. 11:3-7.6(e), plaintiff is not entitled under the regulation to have his premium prorated. In the absence of an attack upon the validity of the exception to the regulation requiring prorating, we do not pass upon the issue of its validity.
Plaintiff contends that Allstate is liable for Beuttel's negligence, since Beuttel was an Allstate agent. Plaintiff reasons that Allstate permitted Beuttel to advertise as its agent and that Allstate represented Beuttel to be reasonably competent, and therefore it should be liable for his negligence. Alternatively, he argues that Allstate clothed Beuttel with apparent authority to act as its agent and should be estopped from denying that Beuttel was its agent. Allstate argues that Beuttel *319 was not its agent for purposes of this policy because it was written pursuant to the New Jersey Automobile Full Insurance Availability Act, N.J.S.A. 17:30E-1 et seq., under which Allstate was compelled to issue a policy. Allstate notes that the application form states that Beuttel will not be deemed "... an agent of any company for the purpose of this insurance."
The motion judge relied on Pearson v. Selected Risks Ins. Company, 154 N.J. Super. 240 (Law Div. 1977), which held that "[w]here an insurer involuntarily undertakes to insure an assigned risk, the licensed broker who produces the business that is assigned to the insurer does not become the agent of the insurer for the purpose of writing additional business for the assigned risk by the insurer and the broker does not speak for the insurer in its relationship with the assigned risk." Id. at 245 (footnote omitted). Our Supreme Court has cited Pearson with approval for the proposition that "the producer of an assigned risk policy is the agent of the insured and not of the insurer." Clendaniel v. New Jersey Mfrs. Ins. Co., 96 N.J. 361, 370 (1984).
Appellant does not quarrel with the holding in the Pearson case as it applies to a producing broker per se, rather he argues that Beuttel was an agent of Allstate independent of this assigned risk situation and contends:
Robert Beuttel was and is an Allstate agent, hangs an Allstate sign outside of his office, and uses Allstate letterhead and supplies to run the branch office. Clearly, he is given express authority by Allstate Insurance Company to provide skillful service to the insuring public and to sell, solicit and service the insurance needs of those customers who have chosen an Allstate branch office. Presumably Mr. Lilly was attracted to the Allstate office because of its advertising and reputation to provide good service for its customers.
Since this case was decided on summary judgment we must consider all of the pleadings and discovery material "in a light most favorable to the party opposing the motion, all doubts being resolved against the movant." Allstate Redevelopment v. Summit Assoc., 206 N.J. Super. 318, 326 (App.Div. 1985). We must view Beuttel as an agent or employee of Allstate, rather than an independent broker. An insurance agent is different *320 from an insurance broker, in that the former is authorized to enter into contracts on behalf of the insurance company, whereas the latter procures insurance on behalf of the insured. Compare N.J.S.A. 17:22-6.1 (agent defined) with N.J.S.A. 17:22-6.2 (broker defined). A company may be bound by the statements of its agent, even if erroneous. Harr v. Allstate Ins. Co., 54 N.J. 287, 300-307 (1969).
The New Jersey Automobile Full Insurance Availability Act, N.J.S.A. 17:30E-1 et seq., was part of a series of insurance reforms adopted in 1983, but which were to "remain inoperative" until January 1, 1984. L. 1983, c. 65, § 37. That act replaced the Assigned Risk Plan with the New Jersey Full Insurance Underwriting Association ("Association") and provides "automobile coverage for those individuals who are unable to be written in the voluntary market...." Senate Labor, Industry and Professions Committee Statement to L. 1983, c. 65 at 424 (formerly Assembly Bill 1696). The Association consists of all insurers licensed to issue automobile insurance in New Jersey. N.J.S.A. 17:30E-4. All of those insurers must be members of the Association and are bound by the Association's plan of operation, N.J.S.A. 17:30E-4, which the Association must adopt. N.J.S.A. 17:30E-6. Insurers, referred to in the statutes as "servicing carriers," are to issue policies through the Association. N.J.S.A. 17:30E-7e. Qualified applicants can seek automobile insurance from the plan through a "producer." N.J.S.A. 17:30E-9a. A "producer" is a licensed insurance agent or broker. N.J.S.A. 17:30E-31. Producers have the authority to issue binders to qualified applicants. N.J.S.A. 17:30E-9a. Upon receipt of a premium, a servicing carrier must issue an insurance policy to a qualified applicant. N.J.S.A. 17:30E-9b.
N.J.S.A. 17:30E-10 states, in pertinent part:

Producers who are exclusive representatives of a company which is a servicing carrier shall be assigned to that carrier for the servicing of association policies. Producers who are not exclusive representatives of a servicing carrier may, at the election of the producer and with the consent of *321 the servicing carrier, contract with the association to do business through any servicing carrier. Producers who are not exclusive representatives of a company which is a servicing carrier or who have not otherwise established a contractual relationship with a servicing carrier pursuant to this section, shall be assigned to all servicing carriers on an equitable basis by the association, pursuant to the plan of operation. The assignments shall be in proportion to the percentage of association business which each servicing carrier has contracted with the association to accept and shall be balanced among territories. The assignments shall be reviewed at least annually and upon the request of a servicing carrier or producer. Pursuant to the plan of operation, the assignments shall be reallocated if it is found that the allocations are demonstrably inequitable. Reallocations shall be made in a manner to minimize the shifting of producers. [(emphasis supplied)].
Under the plan of operation adopted by the Association, the Association has the power and duty to
[a]rrange for the issuance of automobile insurance to any qualified applicant through servicing carriers. Each servicing carrier shall issue policies in the name of the servicing carrier, on behalf of the association, to the extent the plan of operation provides. Servicing carriers, as agents of the association, shall have no individual liability for claims or policies written by the association. [N.J.S.A. 17:30E-7e (emphasis supplied)].
We recognize that plaintiff did not fill out an Allstate application. He applied for insurance from the Association and according to the application he understood and agreed that the producer was not acting as an agent of any company for the purposes of the insurance. However, we perceive the legislative intent of that statutory reservation to be to insulate the participating or servicing carrier from being bound by the acts of the producing agent.
Indeed, the connection which plaintiff attempts to make to impose vicarious liability on Allstate for the acts of defendant Beuttel is unrelated to the coincidence of Beuttel's obtaining as the producer for the Association a policy of insurance with his own principal Allstate. There is no attempt to bind Allstate for the acts of Beuttel merely because he was the producer of this particular policy. Plaintiff readily acknowledges that, if it were an insurance company other than Allstate that wrote the policy, that other company would be insulated from Beuttel's acts. Pearson, 154 N.J. Super. at 245. Plaintiff's point is that even if the carrier that wrote the insurance *322 were another carrier, Allstate would still be responsible for the negligent acts of its agent in servicing and selecting insurance for clients which the agent produced. As plaintiff asserts, the public may well be attracted to an Allstate office because of its advertising and reputation to provide good service for its customers.
The logic of plaintiff's argument in the circumstances of this case is inescapable. We must assume for the purposes of the motions that Beuttel was acting within his authority as an Allstate agent when he placed the coverage through the New Jersey Joint Underwriters Association. We recognize that at least with respect to this transaction Allstate has denied that Beuttel was its agent and asserts that he was a broker doing business for Allstate. However, Beuttel testified that he was an Allstate agent and had been for several years. Even if he were not, plaintiff is entitled to a trial on the issue of apparent authority or as plaintiff refers to it, the "holding out theory." Further, according to Beuttel his secretary had direct authority from Allstate to accept the $26.
Where such factual and legal questions exist summary judgment is inappropriate. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 73 (1954). A remand is required to determine whether Beuttel is an agent of Allstate and whether he was authorized to procure and process business relating to the issuance of insurance through the New Jersey Joint Underwriters Association and whether, if not directly authorized, he nonetheless had apparent authority. As noted Allstate may also have bound itself by authorizing Beuttel's secretary to accept the payment, thereby effecting reinstatement.
Plaintiff also maintains that Beuttel's acceptance of the additional premium binds Allstate, relying on N.J.S.A. 17:22-6.2a, which provides:
Any insurer which delivers in this State to any insurance broker a contract of insurance (other than a contract of life insurance, or life, accident or health insurance) pursuant to the application or request of such broker, acting for an insured other than himself, shall be deemed to have authorized such broker to *323 receive on its behalf payment of any premium which is due on such contract at the time of its issuance or delivery or payment of any installment of such premium or any additional premium which becomes due or payable thereafter on such contract, provided such payment is received by such broker within 90 days after the due date of such premium or installment thereof or after the date of delivery of statement by the insurer of such additional premium.
This issue was raised in Weathers, 153 N.J. Super. at 569, wherein we held that the statute did not apply when the policy was cancelled "because of the insured's own failure to make timely payment of the premium due." The holding in Kubeck v. Concord Ins. Co., 103 N.J. Super. 525, 533 (Ch.Div. 1968), aff'd o.b. 107 N.J. Super. 510 (App.Div. 1969), that the "right of cancellation [for nonpayment of premium which was in fact collected by the broker] is to be circumscribed by the statutory provisions ..." by placing the burden of ascertaining whether the premium has been paid on the insurer, is not applicable as there the insured paid the full premium but the broker failed to remit it to the company.
The time sequence here is the same as in Weathers, in that plaintiff attempted to pay the additional premium after the insurance was cancelled. If plaintiff had paid the additional premium prior to the effective date of cancellation there would have been coverage. Under the Servicing Carrier Rules of Practice timely payment to the producer constitutes payment to the carrier. The rule of practice dealing with policy cancellation states:
B. Cancellation by the Servicing Carrier

The Servicing Carrier shall compute return premium pro rata. The Servicing Carrier may cancel a policy at any time during the policy period, if it is based on one or more of the following:
1. Non-payment of Premium

Note: Notice of cancellation for non-payment of premium shall not be effective if payment of the amount due is made prior to the effective date of such notice.
Payment of the amount due to the Producer constitutes payment to the Servicing Carrier. [N.J. Automobile Full Insurance Underwriting Association, Servicing Carrier Rules of Practice 7 (effective Nov. 8, 1983)].
Since, at the earliest, plaintiff paid the additional premium to the producer on March 26, 1984 and the effective date of *324 cancellation was 12:01 a.m. on March 26, 1984, it does not follow that payment to Beuttel constituted payment to Allstate, sufficient to avoid cancellation unless Allstate specifically authorized Beuttel to accept the payment.
Plaintiff also contends that Allstate failed to follow the statutorily mandated cancellation procedures because it did not retain a duplicate copy of the notice of cancellation which was certified to be a true copy. Plaintiff relies on N.J.S.A. 17:29C-19, as interpreted in Celino v. General Acc. Ins., 211 N.J. Super. 538, 540-543 (App.Div. 1986). That statute, N.J.S.A. 17:29C-10, states:
No written notice of cancellation or of intention not to renew sent by an insurer to an insured in accordance with the provisions of an automobile insurance policy shall be effective unless a. (1) it is sent by certified mail or (2) at the time of the mailing of said notice, by regular mail, the insurer has obtained from the Post Office Department a date stamped proof of mailing showing the name and address of the insured and b. the insurer has retained a duplicate copy of the mailed notice which is certified to be a true copy.
Plaintiff raised the issue in the Law Division following the judge's decision granting summary judgment to Allstate on counts one and three, but reserving decision on the question of whether Allstate gave proper notice. Plaintiff at that time argued that (1) the notice was untimely under N.J.S.A. 17:29C-8 (an argument not pressed on appeal) and (2) Allstate had failed to adduce sufficient proof of mailing, in violation of N.J.S.A. 17:29C-10. The trial judge rejected these arguments.
Plaintiff now appears to concede that Allstate "met condition (a) [of the statute], since [defendant] has in fact produced a date stamped proof of mailing showing the name and address of the plaintiff...." However, according to plaintiff, Allstate has not demonstrated compliance with subsection b of N.J.S.A. 17:29C-10, which requires the insurer to retain "a duplicate copy of the mailed notice which is certified to be a true copy."
In Celino, supra, this court held that failure to comply with both subsections of the statute was fatal to the insurer. 211 N.J. Super. at 541, 543. In that case however there was evidence that neither the insured nor the finance company ever received *325 the notice of cancellation. To prove mailing, the insurer only produced photocopies of the post office certificate of mail forms. Id. at 540. We viewed N.J.S.A. 17:29C-10 as the Legislature's response to some practical proof of mailing problems.
In both Weathers and Celino the insured's lack of receipt brought into question whether there was proper mailing. Here it is known that Allstate mailed the notice since plaintiff received it. While the insured's alleged late receipt of the notice raises questions about when it was mailed, Allstate has fulfilled the first prong of the statute by presenting a proof of mailing stamp showing a mailing date of March 6, 1984. Since plaintiff concedes receipt of the notice we fail to see how he was prejudiced by any failure on Allstate's part to retain a duplicate certified copy.
Plaintiff seeks counsel fees if he prevails. R. 4:42-9(a)(6) states that counsel fees may be awarded "[i]n an action upon a liability or indemnity policy of insurance, in favor of a successful claimant." However, counsel fees are not usually awarded on a direct action by the insured against the insurance company for benefits payable under the policy; rather, the rule usually applies where the insured hires his own attorney after the liability carrier wrongfully refuses to provide coverage in a third party suit. Vesley v. Cambridge Mut. Fire Ins. Co., 189 N.J. Super. 521, 522 (App.Div. 1981), aff'd by an equally divided court, 93 N.J. 323 (1983). Nonetheless, counsel fees have been allowed by our Supreme Court in an action for no-fault benefits. Maros v. Transamerica Ins. Co., 76 N.J. 572, 579 (1978). But see Enright v. Lubow, 215 N.J. Super. 306, 312-313 (App.Div. 1987) (denying award of plaintiff's counsel fees in first party claim against insurance company). Where fees are awardable, the trial court has the discretion as to the amount, or whether any fees should be awarded at all. Helton v. Prudential Property & Cas. Ins. Co., 205 N.J. Super. 196, 200-201 (App. *326 Div. 1985). If plaintiff prevails on remand the trial court may consider the question of counsel fees.
We reverse and remand.