239 N.J. Super. 13 (1990)
570 A.2d 994
OBAL LOPEZ, PLAINTIFF-RESPONDENT,
v.
NEW JERSEY AUTOMOBILE FULL INSURANCE UNDERWRITING ASSOCIATION, DEFENDANT-APPELLANT, AND THE CONESA INSURANCE AGENCY, INC., DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Submitted December 6, 1989.
Decided February 15, 1990.
*16 Before Judges KING, BAIME and KEEFE.
Hein, Smith, Berezin, Maloof & Spinella, attorneys for appellant (Robert J. Maloof and Ellen W. Smith, on the brief).
Solomon Lefkowitz, attorney for respondent (Charles W. Schwartzberg, on the brief).
The opinion of the court was delivered by KEEFE, J.A.D.
The questions presented are whether an automobile insurance policy originally issued by the New Jersey Automobile Full Underwriting Association (JUA) lapses when an offer to renew the policy is not accepted by payment of all or part of the premium on or before the renewal date and whether, in this case, an appropriate offer to renew was made. These precise issues have not been previously addressed.
The trial judge held that the insurance policy did not lapse at the end of the policy period, despite the insured's failure to pay the renewal premium, because the insurer failed to properly cancel the policy by issuing a notice of cancellation in conformance with the requirements of N.J.S.A. 17:29C-10. We now hold that where an offer to renew an automobile policy is made *17 by the insurer in accordance with applicable regulations and the offer is not accepted by timely payment of the premium, the policy lapses on the expiration date. Under such circumstances, the insurer need not also issue a notice of cancellation. However, because the record before us is not sufficiently complete to permit the conclusion as a matter of law that an appropriate offer to renew was made to the plaintiff, we remand the case for further proceedings consistent with this opinion.
The JUA was created pursuant to statute as a non-profit organization established to provide insurance to individuals who are unable to obtain coverage in the voluntary market. N.J.S.A. 17:30E-2. The facts stated briefly are as follows. Hanover Insurance Company (Hanover), as a servicing agent for JUA, N.J.S.A. 17:30E-7e, issued a motor vehicle insurance policy to plaintiff, Obal Lopez. The stated policy period was from January 18, 1986 to January 18, 1987. The producer for the policy was defendant ConEsa Insurance Agency, Inc. (ConEsa). N.J.S.A. 17:30E-10. Hanover contends that on December 16, 1986, 32 days prior to the expiration of the policy, it mailed a "renewal bill" to plaintiff for the policy period to begin on January 18, 1987 and terminating on January 18, 1988. The notice stated as follows:
A renewal policy for the new policy period shown above will be issued provided the renewal premium is received before 1/18/87.
The total premium charge for the entire policy period was $494.00 if paid in installments. A minimum payment of $166.88 was requested. The notice was sent to plaintiff at 410 Palisade Avenue, Union City, New Jersey, the address shown on his policy. A copy of the notice was also sent to ConEsa.
ConEsa contends that on December 17, 1987 it sent a letter to plaintiff advising him that his insurance would expire on January 18, 1987 unless the policy was renewed. The letter was sent to plaintiff in Spanish.
*18 On January 6, 1987 Hanover claims to have sent a "reminder notice" to plaintiff which stated in pertinent part:
If payment is not received in our office by 1/18/87 you will no longer have automobile insurance protection. You will not receive your new automobile insurance identification card.
This is the last notice you will receive. If payment has been made, please disregard this notice.
Further, ConEsa claims that on January 20, 1987 it sent plaintiff another notice stating that "your automobile insurance policy expired on 1/18/87" and informed plaintiff that insurance is mandatory in New Jersey.
Plaintiff did not respond to any of the notices. He claims that he did not receive them, explaining that he resides in a 34 unit apartment building and occasionally does not receive mail addressed solely to the street address without an apartment designation. On January 25, 1987, plaintiff was involved in an automobile accident and subsequently instituted this suit against JUA when it refused to provide any benefits to him with regard to that accident.
Plaintiff argues on appeal that these circumstances required either a nonrenewal notice governed by N.J.S.A. 17:29C-9 or a notice of cancellation governed by N.J.S.A. 17:29C-7. In either case, he maintains that Hanover did not comply with the proof of mailing requirements for such notices as set forth in N.J.S.A. 17:29C-10. JUA argues that neither of those provisions apply to these facts. It contends that N.J.A.C. 11:3-8.2, a regulation specifically concerning offers to renew auto insurance policies, governs this case and that Hanover complied with that regulation in every respect.
The New Jersey Automobile Full Insurance Availability Act, N.J.S.A. 17:30E-1 to -24, was part of a series of insurance reforms adopted in 1983 which were intended to become operative on January 1, 1984. L. 1983, c. 65, § 13. Pursuant to the "Plan of Operation" approved by the Commissioner of Insurance, N.J.S.A. 17:30E-6; -7, JUA adopted Servicing Carrier Rules of Practice (JUA Rules). Lilly v. Allstate Ins. Co., 218 *19 N.J. Super. 313, 323, 527 A.2d 903 (App.Div. 1987). The JUA Rules contain specific provisions regarding renewal offers, nonrenewal notices and cancellation notices. Those same rules have corollary statutory and regulatory sources applicable to policies issued in the voluntary market. See N.J.A.C. 11:3-8.2 (Renewals); N.J.S.A. 17:29C-9 (Nonrenewal); N.J.S.A. 17:29C-7 (Cancellation).
The trial judge believed that our decision in Lilly required Hanover to issue a notice of cancellation to plaintiff in compliance with N.J.S.A. 17:29C-10. The judge properly rejected plaintiff's argument that N.J.S.A. 17:29C-9 concerning notices of nonrenewal applied to these facts, noting that the section did not apply "[i]n the case of non-payment of premium." However, the judge reasoned that the policy did not terminate automatically on its expiration date and, thus, if plaintiff did not pay the renewal premium, a notice of cancellation was required by N.J.S.A. 17:29C-7 and to be effective must be mailed in accordance with N.J.S.A. 17:29C-10. In this respect the judge failed to appreciate the difference between cancellation of policies, nonrenewal notices and offers of renewal.
The concepts of cancellation, renewal and nonrenewal are interrelated but distinct. Cancellation is a term ordinarily applicable to the procedure by which a policy already issued and in force is terminated under conditions specified either by JUA rules, if it is a JUA policy, or by statute, if it is a voluntary market policy. (JUA Rule 5, "Policy Cancellation"; N.J.S.A. 17:29C-7, Notice of Cancellation applicable to voluntary market policies).
On the other hand, procedures concerning renewal offers and nonrenewal notices recognize the fact that insurance policies afford coverage only for a specified period of time and that coverage will cease unless the policy is renewed. In order to prevent "lapses in coverage" resulting from "oversight by the insured" statutory and regulatory provisions exist requiring *20 insurance companies to notify the insured that the policy period is about to end but that coverage will continue if the premium is paid by a certain date (a renewal offer), or that the policy period is about to end and the insured does not intend to renew the policy (a notice of nonrenewal). See Barbara Corp. v. Bob Maneely Ins. Agency, 197 N.J. Super. 339, 345, 484 A.2d 1292 (App.Div. 1984).
Perhaps because continuation of coverage is favored in our law, JUA servicing carriers and voluntary market insurers may give notice of intention not to renew a policy only under certain specified conditions. (Compare N.J.S.A. 17:29C-9 and N.J.A.C. 11:3-8.3 concerning voluntary market nonrenewal notices with JUA Rule 5, at 11). In order to be effective, notices of nonrenewal, like notices of cancellation, pertaining to voluntary market policies must be sent in strict compliance with the provisions of N.J.S.A. 17:29C-10. That statute requires the insurer to provide proof of notice by using certified mail or by obtaining a date stamped proof of mailing from the post office. It also requires the insurer to retain a duplicate copy of the mailed notice certified to be a true copy. There is no corollary provision in the JUA rules pertaining to notices of nonrenewal or, for that matter, notices of cancellation. Indeed, N.J.S.A. 17:29C-6(A) specifically states that the "Act concerning cancellation and nonrenewal of automobile liability, physical damage or collision insurance policies", of which N.J.S.A. 17:29C-10 is a part, is not applicable to "any policy issued under an automobile assigned risk plan, ...." Therefore, it would appear that because the JUA is a successor to the Assigned Risk Plan, Lilly, 218 N.J. Super. at 315, 320, 527 A.2d 903, the notification provisions of N.J.S.A. 17:29C-10 do not apply to a JUA policy.
However, the Lilly decision suggested a contrary result without articulating a reason for that conclusion. Lilly, 218 *21 N.J. Super. at 324-25, 527 A.2d 903.[1] The apparent contradiction between Lilly and N.J.S.A. 17:29C-6(A) can be easily explained by referring to the preamble of the JUA rules concerning "Performance Standards" applicable to servicing carriers. The preamble provides:
All Servicing Carriers shall process Association policies in a manner substantially the same as it would service its voluntary market insureds.
We construe the preamble to require reference to the statutes and regulations applicable to the voluntary automobile insurance market where JUA rules are silent or where their meaning is ambiguous. Such construction permits voluntary market insurers and JUA servicing carriers to follow uniform procedures so as to avoid confusion and obtain predictable results in like circumstances.
For example, the JUA Rules require that the servicing carrier "mail or deliver" cancellation notices and state that nonrenewal notices shall be "provided" to the insured. Because there is ambiguity in the rules concerning how the notices are to be mailed or provided to the insured, the preamble to the JUA Rules directs the inquiry to the applicable voluntary market statute, i.e., N.J.S.A. 17:29C-10, and Lilly so holds. However, Lilly addressed a fact pattern involving cancellation, not as here an offer to renew. In that case Allstate issued a policy to Lilly and then attempted to cancel it upon learning that Lilly had paid only a 21% down payment on the premium, rather than the required 25% down payment. Because the policy was already issued, the procedures required to effect cancellation were relevant to the decision.
However, the focus in this case necessarily must be on the existing rules concerning renewal offers. In the voluntary market, renewal offers are governed by regulation rather than *22 statute. N.J.A.C. 11:3-8.2. The relevant portions of the regulation are as follows:
(a) Every insurer shall make an offer to the insured named in a policy subject to this subchapter to renew such policy upon its expiration date, unless a valid notice of nonrenewal or conditional renewal as specified in (h) below has been sent by the insurer to the insured in accordance with this subchapter.
(b) Each renewal offer shall be in the usual form of either a renewal policy, a certificate, or a renewal bill. With respect to payment of the renewal premium, notice shall be given not more than 45 days or less than 30 days prior to the due date of the premium and shall clearly state the effect on (sic) nonpayment of the premium by the due date.
........
(d) Payment by the insured in accordance with the terms stated in the billing notice or in accordance with terms agreed to with the company or producer shall constitute acceptance of the renewal offer by the insured.
The regulation clearly envisions an offer of continued coverage which is accepted only upon timely payment of all or a required portion of the premium.
The corollary JUA rule governing "renewals" substantially tracks the regulation applicable to voluntary market policies. It provides:
Extension certificates, declaration sets or renewal offers for Association policies are to be prepared and mailed by the Servicing Carrier at least thirty (30) days in advance of the renewal effective date and shall specify the rating basis and payment plans for the premium charged. In the event of a renewal offer, the renewal shall be issued and mailed within thirty (30) days of the Servicing Carrier receipt of the renewal premium.
This rule, like the voluntary market regulation, makes it clear that the offer to renew must be accepted by payment of the premium and that a renewal policy continuing coverage need not be issued until the premium is paid.
However, neither the voluntary market regulation nor the JUA rule specifically provides how the offer is to be made, or, conversely, how the Servicing Carrier proves that an appropriate offer of renewal has been made. The JUA rule simply says the offer shall be "prepared and mailed." Without statutory or regulatory authority to the contrary, we conclude that the renewal offer can be made by using ordinary mail. N.J.S.A. 17:29C-10 upon which plaintiff relies is clearly limited by *23 its terms to notices of cancellation or nonrenewal. Further, the provisions of N.J.S.A. 17:29C-9 make it clear that an offer to renew is distinguishable from a notice of nonrenewal. Thus, because the Legislature has made a distinction between an offer to renew and a notice of nonrenewal we cannot conclude that there was a legislative intent to require either voluntary insurers or JUA servicing carriers to prove that the prerequisite offer to renew was made in accordance with the provisions of N.J.S.A. 17:29C-10.
Nonetheless, Hanover must prove in the subject case that it mailed an offer to renew the policy in accord with the JUA rule. If the offer to renew was mailed, it is irrelevant that plaintiff claims not to have received the notice.[2] However, plaintiff's certification that he did not receive the notice is sufficient to raise an issue of fact as to whether it was mailed. Thus, the critical issue in this case is not whether an insurance policy provides coverage beyond its expiration date unless an appropriate notice of cancellation is mailed, but whether Hanover, as the servicing carrier, provided an appropriate offer to renew and proved that it has done so.
Whether mailing has occurred is normally a question of fact, although "in accordance with normal procedure, the judge may take this issue from the fact-finder where the proofs are so conclusive as to establish mailing [or] non-mailing of the notice as a matter of law." Weathers v. Hartford Ins. Group, 77 N.J. 228, 234, 390 A.2d 548 (1978). In this case, because the judge erroneously concluded that N.J.S.A. 17:29C-10 applied, no specific finding was made that a renewal offer was actually mailed by Hanover, and we cannot make such a finding in the exercise of our original jurisdiction based on the record before us.
*24 The only information on the subject is found in the certification of Lacrenda Young, a Hanover claims representative, submitted in connection with defendant's summary judgment motion. The certification states in pertinent part:
4. Additionally, the records of Hanover Insurance Company show that on December 16, 1986 a renewal offer was sent to Obal Lopez. Attached to this certification is a copy of the two page renewal quote, as well as the bill requesting Obal Lopez pay the renewal premium before 1/18/87, so that Lopez would have insurance coverage from 1/18/87 to 1/18/88 in connection with a 1978 Datsun.
5. An additional reminder notice was forwarded to Obal Lopez on 1/6/87 reflecting that payment had to be received by 1/18/87 in order for Obal Lopez' insurance protection to continue.
6. Finally, the records of Hanover Insurance Company show that no payment of the renewal premium was made by Obal Lopez prior to or by 1/18/87.
The certification by the claims representative is not based upon personal knowledge and is entirely devoid of evidence pertaining to Hanover's practices and procedures. Thus, it is clearly not sufficient as a matter of law to establish that the requisite notice had in fact been mailed. See Cwiklinski v. Burton, 217 N.J. Super. 506, 508-11, 526 A.2d 271 (App.Div. 1987); Celino v. General Acc. Ins. Co., 211 N.J. Super. 538, 542-43, 512 A.2d 496 (App.Div. 1986); Waite v. Doe, 204 N.J. Super. 632, 636, 499 A.2d 1038 (App.Div. 1985), certif. den. 102 N.J. 398, 508 A.2d 256 (1986); Johnson & Dealaman, Inc. v. Wm. F. Hegarty, Inc., 93 N.J. Super. 14, 20, 224 A.2d 510 (App.Div. 1966); Szczesny v. Vasquez, 71 N.J. Super. 347, 354, 177 A.2d 47 (App.Div. 1962).
The judgment is reversed and the matter is remanded for further proceedings consistent with this opinion.
NOTES
[1] Perhaps the court in Lilly felt no compulsion to give a reason for its conclusion because in that case Allstate, as the servicing carrier, felt bound by the provisions of the statute when it attempted to cancel Lilly's policy.
[2] As pointed out in Weathers v. Hartford Ins. Group, 77 N.J. 228, 390 A.2d 548 (1978), even N.J.S.A. 17:29C-10 is no more than a proof of mailing statute. Once the mailing requirements have been met, receipt by the insured is irrelevant.