686 A.2d 776

DIANA RODRIGUEZ, PLAINTIFF–RESPONDENT, v. HUDSON COUNTY COLLISION COMPANY, AND ITS AGENT OR EMPLOYEE, GLENN H. KITMAN, JOINTLY, SEVERALLY AND IN THE ALTERNATIVE, DEFENDANTS/THIRD–PARTY PLAINTIFFS–RESPONDENTS, v. R.C. ENGLISH AGENCY AND JANNINE S. RICHTER, INDIVIDUALLY, THIRD–PARTY DEFENDANTS–RESPONDENTS.

FRANCISCO GARCIA, PLAINTIFF–RESPONDENT, v. HUDSON COUNTY COLLISION COMPANY, AND ITS AGENT OR EMPLOYEE, GLENN H. KITMAN, JOINTLY, SEVERALLY AND IN THE ALTERNATIVE, DEFENDANTS/THIRD–PARTY PLAINTIFFS–RESPONDENTS, v. R.C. ENGLISH AGENCY AND JANNINE S. RICHTER, INDIVIDUALLY, THIRD–PARTY DEFENDANTS–RESPONDENTS.

R.C. ENGLISH AGENCY, THIRD–PARTY DEFENDANT/FOURTH–PARTY PLAINTIFF–RESPONDENT, v. I.G. INC., SPRINGFIELD AGENCY, JOHN DOE 1–10 INDIVIDUALS AND JOHN DOE 1–10 ENTITIES, JANNINE S. RICHTER, DONALD F. SCHNOOR AND GEORGE H. GROB, FOURTH–PARTY DEFENDANTS–RESPONDENTS.

JANNINE S. RICHTER, THIRD–PARTY DEFENDANT/FIFTH–PARTY PLAINTIFF–RESPONDENT, v. COMMERCIAL AUTOMOBILE INSURANCE PROCEDURE (C.A.I.P.) AND PROGRESSIVE CASUALTY INSURANCE COMPANY, FIFTH–PARTY DEFENDANTS–APPELLANTS.

DONALD F. SCHNOOR AND GEORGE H. GROB, FOURTH–PARTY DEFENDANTS/SIXTH–PARTY PLAINTIFFS–RESPONDENTS, v. COMMERCIAL AUTOMOBILE INSURANCE PROCEDURE (C.A.I.P.) AND PROGRESSIVE CASUALTY INSURANCE COMPANY, SIXTH–PARTY DEFENDANTS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Submitted December 3, 1996—Decided January 6, 1997.

214

Before KLEINER and COBURN, JJ.

*Berlin, Kaplan, Dembling & Burke,* attorneys for appellants (*Marc L. Dembling,* of counsel; *Mr. Dembling* and *Janet L. Pisansky,* on the brief).

*Fuchs, Altschul, Greenberg & Sapin,* attorneys for respondent Diana Rodriguez, and *McAlevy & Lynch,* attorneys for respondent Hudson County Collision Company (*Robert Fuchs* and *John D. Lynch,* on the joint brief).

The opinion of the court was delivered by

KLEINER, J.A.D.

Progressive Casualty Insurance Company (Progressive) and New Jersey Automobile Insurance Plan Commercial Automobile Insurance Procedure (Plan) appeal from the entry of an order, following a bench trial, requiring the reformation of an automobile insurance policy that they issued to respondent, Hudson County Collision Company (Hudson County). Specifically, the trial judge ordered that the policy's effective date be changed to April 1, 1992, at 12:01 a.m., thereby permitting Hudson County recourse to the policy for the accident which occurred on that same date involving one of its drivers. The accident resulted in injuries to plaintiffs Diana Rodriguez, a passenger in the Hudson County vehicle, and Francisco Garcia, the operator of a vehicle struck by the Hudson County vehicle.

In reaching this decision, the trial judge concluded that third-party defendant Jannine Richter, a broker with the R.C. English Agency, acted as an agent of the Plan and Progressive. We conclude that the judge misconstrued the facts presented at trial.

Richter was not the agent of the Plan or Progressive, nor did she have actual or apparent authority to bind either the Plan or Progressive. The record on appeal clearly demonstrates that Richter was simply a broker. Based on Richter's status as a broker, her negligence in arranging an insurance policy for Hudson County may not be rectified by reformation of the insurance policy. We therefore reverse the order entered by the trial judge.

I

From January 1989 until March 1993, Richter worked as office manager and licensed insurance producer at the R.C. English Agency, an insurance agency. In this capacity, she was responsible for a number of clients including Hudson County, which maintained a garage policy providing liability coverage with Public Service Mutual Insurance Company (PSM).

In January 1992, PSM notified both Richter and Hudson County that the garage policy was going to be canceled, effective April 1, 1992, because of excess loss. Richter spoke with Peter Begovich, president of Hudson County, about the imminent cancellation, and he asked her to find a replacement carrier. Richter attempted to do so but was without success in the voluntary insurance market. Richter advised Begovich that, as a last resort, she would have to go through the Plan, a New Jersey sponsored entity that assists in obtaining coverage for otherwise uninsurable risks. On March 24, 1992, Richter sent Begovich a quote from the Plan. Begovich subsequently instructed her to apply for a policy through the Plan.

The Plan, New Jersey Automobile Insurance Plan Commercial Automobile Insurance Procedure, consists of guidelines encompassed in twenty-five sections. Section 12 is entitled "Designation of Servicing Carrier and Effective Date of Coverage." Section 12 is further divided as follows:

A. For Private Passenger, Light Trucks, Motorcycles, Recreational Trailers, Motor Homes and Camper Bodies Only:

B. For All Applicants Other Than Those Defined in Subsection A

Unquestionably, Hudson County intended to insure vehicles which do not fall within Section 12A. Section 12B of the guidelines applies in this case and specifically provides:

Upon receipt of the application for insurance properly completed and the deposit specified in Section 11, and if the application form shows that the applicant is eligible for coverage, the Plan shall designate a Servicing Carrier to which the applicant shall be assigned and shall so advise the producer of record and shall state in such notice when the coverage shall become effective, which date shall be 12:01 a.m. on the day following the certified mail postmark as indicated on the transmittal envelope of the completed application and prescribed deposit. All applications submitted by certified mail, in addition to affixing the certified mail receipt number to the outside of the transmittal envelope must also affix such receipt number to the face of the application form. Should the application not be submitted by certified mail, coverage shall become effective at 12:01 a.m. on the day of receipt of the completed application by the Plan accompanied by the prescribed deposit.

Richter prepared the application and mailed it via regular mail to Begovich for his signature at his Union City office on March 30, 1992. She included a memo which stated, "I need the application back in my office by 4/2/92 to bind coverage." Richter acknowledged that the reference to April 2 was a typographical error—the date should have been April 1 because coverage was to have been effective on the first of the month. Begovich, however, was never notified of this error.

Upon receipt of the application and memo in his general mail on March 31, 1992, Begovich realized that the date on the memo had to be an error and, as such, immediately signed the application, wrote out a check and mailed both, via first class mail, to Richter at her office in Burlington County. Begovich noted, and Richter admitted, that the application did not bear Richter's signature when he mailed it back to her.

Richter personally mailed the completed application to the Plan at its address in Providence, Rhode Island. Notwithstanding that she was aware that Begovich's insurance was going to expire on April 1, 1992, she did not send it certified or express mail, nor did she send any letter indicating a desired effective date. Although the application as mailed bore Richter's signature, the date adjoining her signature was March 31, 1992. Based on the testimony

the trial judge correctly concluded that the date placed on the application by Richter, was erroneous. The judge noted:

> I conclude that Ms. Richter received it on April 1, 1992. Her testimony that she mailed it by regular mail on March 31, 1992 must be erroneous. She had not properly advised Hudson of the time requirements of the Plan, nor did she arrange for hand delivery or other express delivery in either direction.
>
> The negligent performance of the R.C. English Agency and Richter in arranging for Hudson County Collision's insurance coverage is obvious.

On April 18, 1992, Progressive, the carrier to whom Hudson County had been assigned, notified Hudson County and Richter of their assignment. The effective date for the insurance policy was April 9, 1992, the date that the Plan received Hudson County's application.

When Progressive received notification of the April 1, 1992, collision, it disclaimed coverage. Litigation was soon thereafter commenced.

## II

■ In reviewing a trial court's conclusions in a nonjury civil action, we are bound to grant substantial deference to the trial court's findings and conclusions. *See Rova Farms Resort, Inc. v. Investors Ins. Co. of America*, 65 *N.J.* 474, 483–84, 323 *A.*2d 495 (1974). A trial court's conclusions should not be disturbed unless we are "convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." *Id.* at 484, 323 *A.*2d 495 (quoting *Fagliarone v. Township of North Bergen*, 78 *N.J.Super.* 154, 155, 188 *A.*2d 43 (App.Div.), *certif. denied*, 40 *N.J.* 221, 191 *A.*2d 61 (1963)).

■■ We agree with the trial judge's conclusions that Richter and her employer were negligent in arranging insurance coverage for Hudson County and that Richter was a "broker-provider." The judge clearly erred, however, in concluding that Richter was a de facto agent of the insurer. Thus, the judge erred in ordering

reformation of the insurance policy. Absent an agency relationship, reformation was an inappropriate remedy.

A broker represents only the insured, while an agent owes a fiduciary duty to the insurance company and acts as its employee. *Weinisch v. Sawyer*, 123 *N.J.* 333, 340, 587 *A.2d* 615 (1991); *see also Lilly v. Allstate Ins. Co.*, 218 *N.J.Super.* 313, 319–20, 527 *A.2d* 903 (App.Div.1987) ("[a]n insurance agent is different from an insurance broker, in that the former is authorized to enter into contracts on behalf of the insurance company, whereas the latter procures insurance on behalf of the insured."). Because of these different allegiances, an insurer will be held responsible for the negligence of its agent, and such negligence can lead to the reformation of the policy in favor of the insured. *Weinisch*, *supra*, 123 *N.J.* at 341, 587 *A.2d* 615. A broker's negligence, however, will not support an action for reformation, nor will the insurer be required to indemnify the broker for any award of damages obtained by the insured. *Ibid.; see also Eason v. NJAFIUA*, 274 *N.J.Super.* 364, 377–78, 644 *A.2d* 142 (App.Div. 1994), *certif. denied*, 140 *N.J.* 327, 658 *A.2d* 726 (1995).

An agency relationship arises when one party authorizes another to act on its behalf while retaining the right to control and direct any such acts. *Sears Mortgage Corp. v. Rose*, 134 *N.J.* 326, 337, 634 *A.2d* 74 (1993). This relationship is not dependent upon the existence of an express agreement between the parties. *Ibid.* "Even if a person is not an 'actual agent,' he or she may be an agent by virtue of apparent authority based on manifestations of that authority by the principal." *Id.* at 338, 634 *A.2d* 74. Apparent authority arises when a principal "acts in such a manner as to convey the impression to a third party that the agent has certain power which he may or not possess." *Lampley v. Davis Machine Corp.*, 219 *N.J.Super.* 540, 548, 530 *A.2d* 1254 (App.Div.1987).

In deciding issues of apparent authority, "[t]he factual question is whether the principal has by his voluntary act placed the agent in such a situation that a person of ordinary prudence, conversant with business uses, . . . is justified in presuming that such agent has the authority to perform the particular act in question."

[*Alicea v. New Brunswick Theological Seminary*, 244 N.J.Super. 119, 129, 581 A.2d 900 (App.Div.1990) *aff'd*, 128 N.J. 303, 608 A.2d 218 (1992) (quoting *Wilzig v. Sisselman*, 209 N.J.Super. 25, 35, 506 A.2d 1238 (App.Div.1986), *certif. denied sub nom. Sisselman v. Goldfinger*, 107 N.J. 109, 526 A.2d 181 (1987)), (alterations in original).]

Liability will be imposed upon the principal in cases involving apparent authority where the actions of a principal have misled a third party into believing that a relationship of authority existed and where the third party has relied upon this belief to his or her detriment. *See Bahrle v. Exxon Corp., supra*, 279 N.J.Super. 5, 25, 652 A.2d 178 (App.Div.), *aff'd*, 145 N.J. 144, 678 A.2d 225 (1996); *Alicea, supra*, 244 N.J.Super. at 129, 581 A.2d 900.

A review of the entire record fails to reveal a shred of evidence that Progressive or representatives of the Plan made any representation that would have permitted Hudson County to conclude that Richter or her employer had any authority, express, implied, or apparent, to bind either the insurer or the Plan. Furthermore, the trial judge's conclusion directly contravenes precedent. A number of different courts have concluded that a broker is *not* an agent of the assigned risk plan or the carrier. *See, e.g., Clendaniel v. New Jersey Mfrs. Ins. Co.*, 96 N.J. 361, 370, 476 A.2d 263 (1984) (stating that under the former Assigned Risk Plan, "the producer of an assigned risk policy is the agent of the insured and not of the insurer"); *Pearson v. Selected Risks Ins. Co.*, 154 N.J.Super. 240, 245, 381 A.2d 91 (Law Div.1977) ("[w]here an insurer involuntarily undertakes to insure an assigned risk, the licensed broker who produces the business ... does not become an agent of the insurer for the purpose of writing additional business for the assigned risk by the insurer....").

The trial judge concluded that language in Section 12A of the Plan's guidelines, when read in conjunction with *N.J.A.C.* 11:3–1.8(c) and *N.J.A.C.* 11:3–1.6(a), which outline *proposed*, but never implemented, provisions of the Plan, may be construed to elevate the status of a broker to the status of an agent. That construction, however, does not apply to an insurance policy written pursuant to Section 12B of the Plan's guidelines. The clear

language of Section 12B that an application not submitted by certified mail is "effective at 12:01 a.m. on the day of receipt of the completed application by the Plan accompanied by the prescribed deposit" negates any conclusion that a broker has authority to bind the servicing insurer or is acting as an agent of the insurer.

■ The trial judge also relied on his perception of the "factual relationship of the parties" to reach his conclusion. According to the judge, "Begovich of H.C.C. was under the impression that the broker, R.C. English/Richter, was authorized to accept the insurance application and fee *on behalf of the N.J.A.I.P. and Progressive Insurance.*" (Emphasis added). Apparently, what the judge meant was that Begovich believed that coverage through the Plan would be in place as soon as Richter received the signed application and deposit. Even if this were true, the only source for this mistaken belief would have been the memo from Richter which was mailed with the application and stated, "I need the application back in my office by 4/2/92 to bind coverage." There is absolutely no indication in the record that Begovich acquired this mistaken belief from the Plan or Progressive. In fact, Begovich testified that he was not made aware of either Section 12B or any other provision of the plan of operation by Richter. If he had been so apprised, he would have understood that Section 12B did not permit brokers to bind coverage for insureds in his particular situation.

If Begovich was operating under the mistaken belief that Richter could bind coverage on his type of policy, this belief originated with the broker and not with the Plan or Progressive. If Begovich then relied to his detriment, it was upon the representations of Richter, not of the Plan.

■ As noted in *Clendaniel, supra,* 96 *N.J.* at 370, 476 *A.*2d 263, absent actual authorization or such acts *by the principal* as would clothe a broker with "indicia of authority to act for the insurer," a broker is not an agent of the insurer.

The trial judge clearly reached an erroneous conclusion. The order imposing liability upon defendants is reversed.